# STATEMENT OF CASE

MOAB Construction Company, Inc. (hereinafter MOAB) was awarded a design build contract by the International Boundary & Water Commission (hereinafter IBWC) to design and construct a new administration building in Falcon Dam Village located in Starr County, Texas. MOAB separately entered into a contract with ALS 88 Design Build, LLC (hereinafter ALS 88), a licensed and registered Architect on or about October 24, 2011; the purpose of this contract was for ALS 88 to provide the architectural design for the project. ALS 88 was not hired to participate or supervise construction of the building in any respect. One of MOAB's obligations under its contract with ALS 88 was to establish and periodically update an overall budget for the project which MOAB failed to do.

Eventually, MOAB terminated the services of ALS 88 for its own convenience. Thereafter MOAB was unable to complete the project through no fault of ALS 88. Approximately a year and a half after MOAB terminated ALS 88, MOAB was terminated by the IBWC for its negligence in failing to physically complete the concrete foundation after two separate attempts. MOAB filed suit against ALS 88 asserting a negligence claim only. ALS 88 countersued for breach of contract.

Prior to the commencement of a jury trial, ALS 88 filed a Motion to Dismiss MOAB's claim pursuant to Tex. Civ. Prac. & Rem. Code §150.002(e) asserting MOAB failed to file an affidavit in accordance with that section. The trial court denied the motion and the case proceeded to trial on March 2, 2015. At the close of MOAB's case and all evidence, ALS 88 moved for a directed verdict which was denied. A jury found in favor of MOAB on its negligence claims and awarded $600,504.69.

Page | 1

ALS 88 timely filed a Notice of Interlocutory Appeal from the Order denying the Motion to Dismiss, and filed an Amended Notice of Appeal from the jury verdict in this court on March 5, 2015. Thereafter, ALS 88 filed a Motion for Judgment NOV and after a hearing the court denied the motion and entered judgment for MOAB.

## ISSUES PRESENTED

1.    Whether the trial court erred in denying ALS 88's Motion for Judgment NOV because the economic loss doctrine forecloses MOAB's negligence claim.

2.    Whether the trial court erred in denying ALS 88's Motion for Directed Verdict on the issue of negligence.

3.    Whether the trial court erred in denying ALS 88's Motion for Directed Verdict on the issue of damages.

4.    Whether the trial court erred in admitting exhibits, overruling objections, and excluding the testimony of Cullen Patrick Coltrane, a professional architect and fact witness.

## STATEMENT OF FACTS

MOAB is a general contracting company owned by Melissa Madsen, and was awarded a contract in 2011 to design and construct a new administration building for the IBWC in Falcon Dam Village, Texas. The IBWC was the federal agency responsible for oversight of the project. MOAB separately contracted with ALS 88, a licensed and registered architect company owned by Annastacia Sequoyah, to provide architectural design services for the project. (RR Defense Ex. 6)(APP Ex. 3)

One of MOAB's obligations under the design contract with ALS 88 was to establish and periodically update an overall budget for the project. (APP Ex. 3 @ pg. 5) During the pendency of the project, MOAB failed or refused to communicate with ALS 88 and/or the IBWC representatives. According to IBWC representative Mr. Valentin Arzola, this

Page | 2

complicated and delayed the progress of the project. (RR Vol. 5 pg. 86-87, line 3/Defense Ex. 8) Ultimately MOAB terminated the services of ALS 88 in September 2012 without cause.

MOAB continued as general contractor on the project for approximately another year and a half until it was terminated by the IBWC in December 2013 after two failed attempts at completing construction of the concrete foundation. (RR Vol. 5 pg. 93, line 4 – pg. 111, line 14; Defense Ex. 9 & 10) MOAB acknowledges that ALS 88 had nothing to do with the problems it had in the completing the concrete foundation (RR Vol. 5, pg. 110, line 18 – pg.111, line 8) and that IBWC identified MOAB's failure to complete the foundation as the primary reason for its decision to terminate the contract. (RR Vol. 5 pg. 111, lines 9-13)

MOAB filed suit alleging that 1) ALS 88 failed to respond to inquiries and requests for revisions in the design; 2) the 90% design documents were due May 12, 2012 but ALS 88 didn't even deliver the 75% design documents by that date; 3) the design in question was extremely flawed; 4) ALS 88 refused all requests by MOAB for the design documents in the CAD format for which ALS 88 had been paid; and 5) ALS 88's lack of communication and coordination became so extreme that it was necessary for MOAB to terminate ALS 88. (CR 1-10)

MOAB offered no evidence to establish any of these claims. MOAB offered no expert testimony to establish the duty of care owed by ALS 88 or that the duty was breached. In addition, the evidence offered by MOAB to establish its damages was speculative and conclusory and amounts to no competent evidence at all. Without reference to any documents or invoices, Ms. Madsen testified that MOAB was paid a total of $329,383.05 on

the project and that its costs totaled $929,887.74. MOAB claimed its damages for ALS 88's alleged negligence represented the difference between what it expended on the Falcon Dam project and what it was paid by IBWC; MOAB claimed this amount was $600,504.69. (RR Vol. 5 pg. 25, lines 6-25)

At trial, ALS 88 negated each allegation by competent evidence. MOAB was not able to identify a single instance when ALS 88 failed to respond to inquiries and requests for revisions in the design. (RR Vo. 5 pg. 39, line 17 – pg. 42, line 14) Ms. Madsen admitted the 90% design documents were due and delivered in July 2012, (RR Vol. 6 pg. 15, lines 4-24) and she was not aware of any evidence to establish her claim that the 90% design development plans were due in May 2012. (RR Vol. 5 pg. 58, lines 13-23) Finally, Ms. Madsen was not aware of any evidence to establish MOAB's claim that the 75% design completion documents weren't submitted in April 2012 when they were due. (RR Vol. 5 pg. 72, lines 12-25)

MOAB failed to identify a single design flaw in the 75% design submitted by ALS 88. Ms. Madsen testified in relevant part that MOAB's claim of defective design was based on IBWC's review comments of the 75% design completion documents. (RR Vol. 5 pg. 73, pg. 74, line 1) In fact, Ms. Madsen admitted she had no knowledge of any structural flaw in the design itself. (RR Vol. 5 pg. 73-74, lines 22-1) MOAB's counsel failed to solicit even a scintilla of evidence of any defective design. In questioning Ms. Madsen about the IBWC comments to the 75% design completion documents, MOAB's counsel asked about a single comment unrelated to design in any respect. (RR vol.4 pg. 65, lines 1-25-pg. 66, lines 1-17) Ms. Madsen failed to identify a single design flaw on direct examination and admitted she

Page | 4

was not aware of any on cross, whereas Ms. Sequoyah, a licensed architect, was asked about every single comment provided by the IBWC and testified that none pertained to a design flaw. (RR Vol. 6 pg. 102, lines 6-25 – pg. 107, lines 1-23)

MOAB failed to offer any evidence that ALS 88 was required to provide design documents to MOAB in AutoCAD software format as asserted in its lawsuit. In fact, the evidence established that ALS 88 was not required to provide the AutoCad software to MOAB under any circumstance and was only required to provide it to the IBWC after submission of the corrected 100% and compliance confirmed back check drawings. (RR Vol. 5 pg. 132, lines 14-21 – pg. 133, lines 6-16 & Defense Ex. 11 @ pg. 29)

ALS 88 moved for directed verdict on the issues of negligence and damages (RR Vol. 6 pgs 145-151) which the court denied. After a jury returned a verdict in favor of MOAB, ALS 88 filed a Motion for Judgment NOV asserting MOAB's negligence claims were foreclosed by the economic loss doctrine. (APP Tab 5) The court took the motion under consideration and ultimately denied the motion, in part as untimely and in part because the law was not clearly established. Judgment was entered in favor of MOAB (APP Tab 1) and ALS 88 timely filed an amended notice of appeal from the Jury's verdict in this court.

STANDARD OF REVIEW

This is an appeal from a jury verdict in favor of MOAB, a general contractor against ALS 88, a professional architect pursuant to MOAB's claim of negligence. At the close of MOAB's case and all evidence, ALS 88 moved for a directed verdict. When reviewing a motion for directed verdict that was denied, the appellate court is limited to the specific grounds raised in the motion. See Cooper v. Lyon Fin. Servs., 65 S.W.3d 197, 207

(Tex.App.-Houston [14th Dist.] 2001, no pet.); American Petrofina Co. v. Panhandle Pet. Prod., 646 S.W.2d. 590, 593 (Tex.App.-Amarillo 1983, no writ). Thereafter, ALS 88 filed a Motion for JNOV asserting a legal bar to MOAB's claims, i.e. the economic loss doctrine. After a hearing, the trial court denied the motion and entered Judgment in favor of MOAB.

## SUMMARY OF THE ARGUMENT

The trial court erred in denying ALS 88's Motion for JNOV because the economic loss doctrine precludes recovery in negligence when the damages claimed are limited to economic losses made the basis of a contract between the parties. The trial court also erred in denying ALS 88's Motion for Directed Verdict because (1) MOAB offered no evidence to establish what duty was owed by ALS 88, a professional architect, or that ALS 88 breached any duty owed; (2) MOAB offered no evidence to establish any damages claimed or that the damages claimed were the proximate cause of any breach of duty owed by ALS 88; (3) MOAB failed to plead for special damages, accordingly any such damages are waived; and (4) evidence conclusively negated each alleged act of negligence claimed by MOAB. Finally, the trial court erred in admitting exhibits, overruling objections, and excluding proffered testimony.

## ARGUMENT

**Issue 1.      Whether the Trial Court erred in denying ALS 88's Motion for JNOV because the economic loss doctrine forecloses MOAB's negligence claim.**

MOAB sued ALS 88 under a negligence theory *only* and sought to recover its actual damages. At trial, MOAB claimed monetary damages of $600,504.69 which represented the difference between the amount of money it expended under its design/build contract with

IBWC and the amount received from IBWC before it was terminated from the Falcon Dam project. (RR Vol. 5 pg. 25, lines 6-25)   MOAB did not plead or offer proof of any other damage or injury at trial. (CR pgs.1-10)

ALS 88 filed a Motion for JNOV urging the trial court to enter judgment in favor of ALS 88 pursuant to the economic loss doctrine. (APP Tab 2) After a hearing, the court took the motion under consideration and thereafter denied the motion and entered judgment for MOAB. (APP. Tab 1) The Judge's Notes indicate the trial court concluded in part that ALS 88 had waived the economic loss doctrine for failing to raise it earlier in the proceedings. The court also reasoned the law was not clearly established. (APP. Tab 3) ALS 88 concedes the economic loss doctrine is less clear in certain kinds of cases, particularly where personal injury or property damage is claimed, and in cases where third parties make claims. However, the doctrine is clearly established under the facts of this case.

MOAB cannot recover damages from ALS 88 under a negligence theory as matter of law. Texas courts of appeals have routinely denied recovery of purely economic damages in actions for negligent performance of services where the tort damages sought consists only of economic loss arising under a contract. See e.g. Trans–Gulf Corp. v. Performance Aircraft Servs., Inc., 82 S.W.3d 691 (Tex.App.-Eastland 2002, no pet.); Coastal Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282 (Tex.App.-Houston [14th Dist.] 2000, no pet.); Hou–Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103 (Tex.App.-Houston [14th Dist.] 2000, no pet.); and Indelco, Inc. v. Hanson Indus. N. Am.-Grove Worldwide, 967 S.W.2d 931 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

The Texas Supreme Court has addressed this doctrine in multiple recent opinions including Sharyland Water Supply Corp. v. City of Alton, 354 S.W.3d 407 (Tex. 2011); LAN/STV, A Joint Venture of Lockwood, Andrews & Newman, Inc. and STV Inc., v. Martin K. Eby Construction Company, Inc., 435 S.W.3d 234 (Tex. 2014); and Chapman Custom Homes, Inc., v. Dallas Plumbing Company; 445 S.W. 3d 716 (Tex. 2014). In Sharyland, the Supreme Court discussed the confusion surrounding the doctrine and clarified the circumstances in which the economic loss rule is settled and those in which it is not.

In Texas, it is now well settled that the economic loss doctrine precludes recovery of damages in two separate categories: 1) strict liability claims based on a defective product which damages only itself but not other property and 2) negligence claims premised on a contract to which the plaintiff is a party and the damage sought consists only of economic loss pursuant to the contract. In these two contexts, economic losses are more appropriately addressed through statutory warranty actions or common law breach of contract suits instead of tort claims. See Sharyland, 354 S.W.3d 407, 418 (Tex. 2011)

Supreme Court cases repeatedly affirm the established rule that the economic loss doctrine precludes recovery of economic damages between parties to a contract when the damages claimed pertain to the subject of the contract only. See e.g. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.1986); SW Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex.1991); Wansey v. Hole, 379 S.W.3d 246, 248 (Tex.2012) (per curiam); 1/2 Price Checks Cashed v. United Auto. Ins. Co., 344 S.W.3d 378, 387

(Tex.2011); <u>Med. City Dallas, Ltd. v. Carlisle Corp.</u>, 251 S.W.3d 55, 61 (Tex.2008); and <u>Lamar Homes, Inc. v. Mid–Continent Cas. Co.</u>, 242 S.W.3d 1, 12 (Tex.2007).

In this case, MOAB's alleged damages are premised solely on a claim of negligence despite the existence of a design/build contract between MOAB and IWBC (RR Defense Ex. 11) and a separate design contract between MOAB and ALS 88. (RR Defense Ex. 6) Since MOAB only pursued its economic damages pursuant to a negligence theory of recovery, the district court erred in denying ALS 88's motion for JNOV, and the judgment in favor of MOAB should be reversed and rendered in favor of ALS 88.

In <u>LAN/STV, A Joint Venture of Lockwood, Andrews & Newman, Inc. and STV Inc. v. Martin K. Eby Construction Company, Inc.</u>, 435 S.W.3d 234 (Tex. 2014), the Supreme Court addressed whether the economic loss doctrine applied to bar recovery of purely economic losses from an architect with whom the general contractor did not have a contract. The court reviewed the history of the rule, and specifically recognized the established rule that there is no recovery in tort between parties to a contract when the damages claimed are economic losses that are subject of the contract, as in this case. Accordingly, MOAB's only remedy was to pursue a breach of contract claim which it failed to do.

**Issue 2.    The Trial Court erred in Denying ALS 88's motion for directed verdict because MOAB offered no evidence that ALS 88 was negligent and the evidence conclusively negated each act of negligence asserted by MOAB.**

### A.  Duty Owed by ALS 88

Notwithstanding the above and foregoing, and without waiving same, MOAB failed to offer legally sufficient evidence that ALS 88 was negligent as a matter of law. In order to

Page | 9

establish negligence as to ALS 88, MOAB was required to establish that ALS 88 failed to act as any other reasonably prudent *architect* would have acted under the circumstances. Since MOAB pursued a claim of negligence against a professional architect, it had the burden to establish what duty the architect owed and that it breached that duty. In a negligence case, expert testimony is necessary to establish the standard of care and the violation of that standard when the nature of the negligence is not within the common experience of a layperson. See FFE Transp. Servcs. V. Fulgham, 154 S.W.3d 84, 90 (Tex. 2004); Roark v. Allen, 633 S.W.2d 804,809 (Tex. 1982)

Occupations that are governed by a professional's standard of care include accountants, attorneys, physicians, engineers, architects, nurses, and pilots. See e.g., Cosgrove v. Grimes, 774 S.W.2d 662, 664 (Tex. 1989); Hall v. Huff, 957 S.W. 2d 90, 100 (Tex.App.-Texarkana 1997, pet. denied); Hager v. Romines, 913 S.W.2d 733, 734 (Tex.App.-Fort Worth 1995, no writ); Parkway Co. v. Woodruff, 857 S.W.2d 903, 919 (Tex.App.-Houston [1st Dist.] 1993) aff'd as modified, 901 S.W.2d 434 (Tex. 1995); and Greenstein, Logan & Co. v. Burgess Mktg., Inc., 744 S.W.2d 170, 185, (Tex.App.-Waco 1987, writ denied).

ALS 88 is a licensed architect and created architectural design plans for construction of an administration building to be utilized by the IBWC, an agency of the federal government. As a licensed architect, ALS 88's design of the subject building is not within the common experience of a layperson, accordingly MOAB was required to offer expert testimony to 1) establish the standard of care owed by ALS 88 and 2) that ALS 88 violated that standard of

care. MOAB offered no expert testimony to establish the standard of care owed by ALS 88 or that ALS 88 violated that standard.

In its motion for directed verdict, ALS 88 argued the negligence claims were not established because MOAB had the duty to prove what another architect would do under the same or similar circumstances. (RR Vol. 6 pg. 148, lines 18-25 – pg. 149, lines 1-3) MOAB's counsel recognized that MOAB had the burden to establish that ALS 88 failed to act like another architect would have done, (RR Vol. 6 pg. 147, lines 3-16) but argued MOAB was not required to call an expert to establish its claim against ALS 88. (RR Vol. 6 pg. 150, lines 1-5)

On direct examination, Ms. Madsen testified she was familiar with the way an architect produces work in the design/build context, and that in her experience ALS 88 did not respond to the design/build appropriately in this situation. (RR Vol. 5 pg. 9, lines 8-23) However, Ms. Madsen never identified what duty was owed by ALS 88 and moreover she is not qualified to do so. Ms. Madsen is not a licensed architect and admitted on cross-examination she informed Ms. Sequoyah at the beginning of the project that she was "fairly ignorant about the design build end of it from the architect's perspective." (RR Vol. 5 pg. 35, lines 9-17 & Defense Exhibit 1)

Even if Ms. Madsen were qualified to opine on an architect's duty owed, which she clearly isn't, she never identified what duty an architect owes to a general contractor in a design build project or how ALS 88 supposedly breached any such duty in this case. On direct examination, Ms. Madsen testified she was familiar with the way an architect produces

work in a design build context appropriately and that in her experience the way ALS 88 responded in this situation was "completely out of character." (RR Vol. 5 pg. 9, lines 8-23).

That's it, MOAB's counsel then moved on to another line of questioning. This testimony amounts to no evidence at all, but when combined with Ms. Madsen's later admission that she was "fairly ignorant about the design build end of it from the architect's perspective" the essential elements of a duty owed and breach of that duty were conclusively negated as a matter of law. MOAB's failure to offer expert testimony by another architect to establish what duty ALS 88 owed is fatal and precludes recovery of any damages as a matter of law.

### B. Proximate Cause

**Cause in Fact**

MOAB was also required to prove that any alleged breach of the appropriate standard of care by ALS 88 was the proximate cause of any damages claimed. See Nabors Drilling, U.S.A, Inc. v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009). Proximate cause is comprised of cause in fact and foreseeability. See Western Invs. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005). Cause in fact must be proved by evidence of probative force, and not by mere conjecture, guess or speculation. See Excel Corp. v. Apodaca, 81 S.W.3d 817, 820 (Tex. 2002). Cause in fact does not exist when the alleged negligent acts did nothing more than furnish a condition that made the claimed damage possible, or when the conduct at issue is too remote to the claimed damage. See IHS Cedars Treatment Ctr., 143 S.W.3d 794, 799 (Tex. 2004)

Page | 12

MOAB offered legally insufficient evidence that any acts or omissions of ALS 88 were the cause in fact of MOAB being terminated from the construction project by the IBWC. The only evidence offered was the speculation, guess and conjecture of Melissa Madsen. (RR Vol. 5 pg. 8, lines 15-25 – pg. 9, lines 1-7) There is legally insufficient evidence that any of the alleged negligence of ALS 88 did anything more than furnish a condition that made it possible for MOAB to be terminated in the future.

Further, the alleged acts or omissions by ALS 88 were too remote to the termination of MOAB; the termination letter from IBWC in December 2013 reflects MOAB was terminated for its own negligence in failing to perform its obligation of physically constructing the foundation and did not mention ALS 88 in any respect as a basis for its decision to terminate MOAB. On cross-examination, Ms. Madsen admitted that ALS 88 had nothing to do with the problems MOAB encountered in completing the foundation. (RR Vol. 5 pg. 110, lines 18-25 – pg. 111, lines 1-8) Ms. Madsen also admitted that the IBWC listed this occurrence as the main reason for its decision to terminate MOAB from the project. (RR Vol. 5 pg. 111, lines 9-13)

Moreover, MOAB terminated the services of ALS 88 in September 2012 yet MOAB wasn't terminated from the project until December 2013, approximately a year and a half later. MOAB offered no evidence that any act or omission of ALS 88 was the cause in fact of any injury or damage claimed by MOAB as a result of its termination from the project by the IBWC.

**Foreseeability**

MOAB separately had to establish that any damage claimed by the alleged negligence of ALS 88 was foreseeable; that is 1) the injury claimed might reasonably have been anticipated and 2) the injured party was situated in relation to the subject conduct so that the claimed damage could have been reasonably foreseen. See Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 551 (Tex. 1985).

In this case, MOAB failed to establish that any damages resulting from its termination by IBWC was foreseeable to ALS 88 at the time the parties contracted. There is no evidence that any acts or omissions by ALS 88 would reasonably lead to MOAB's termination by IBWC and no evidence that MOAB's termination from the contract would reasonably have been foreseen by ALS 88. MOAB's termination from the construction project for its own negligence was simply not a foreseeable injury, therefore MOAB is not entitled to recovery of damages in this case.

To recover its damages, MOAB had to prove that its damages would not have occurred "but for" the acts or omissions of ALS 88 and that the damages claimed are a natural, probable, and foreseeable consequence of ALS 88's conduct. See Mead v. Johnson Group, Inc., 615 S.W.2d 685, 687 (Tex. 1981); Nelson Cash Register v. Data Terminal Sys., Inc., 671 S.W.2d 594 (Tex. App.—San Antonio 1984, no writ). MOAB offered no evidence that any act or omission of ALS 88 was the proximate cause of its termination by IBWC. Further, there is no evidence at all that the kind of damages claimed, i.e. loss attributed to its termination by IBWC as opposed to loss attributed to the design/build contract, were a foreseeable result of any act or omission by ALS 88.

Page | 14

There is no evidence to establish that MOAB would not have been terminated from the IBWC contract "but for" any act or omission of ALS 88. Moreover, there is no evidence that the parties considered the damages awarded to be the natural, probable and foreseeable consequence of any breach of the design/build contract by ALS 88.

### C. Evidence Conclusively Negated MOAB's Negligence Claims

At trial, ALS 88 negated each alleged act of negligence by conclusive evidence. MOAB was not able to identify a single instance when ALS 88 failed to respond to inquiries and requests for revisions in the design. (RR Vo. 5 pg. 39, line 17 – pg. 42, line 14) Ms. Madsen admitted the 90% design documents was due and delivered in July 2012, (RR Vol. 6 pg. 15, lines 4-24) and she was not aware of any evidence to establish her claim that the 90% design development plans were due in May 2012. (RR Vol. 5 pg. 58, lines 13-23) Neither was Ms. Madsen aware of any evidence to establish MOAB's claim that the 75% design plans weren't submitted in April 2012 when they were due. (RR Vol. 5 pg. 72, lines 12-25)

MOAB failed to identify a single design flaw in the 75% design submitted by ALS 88. Ms. Madsen testified in relevant part that MOAB's claim of defective design was based on IBWC's review comments of the 75% design submission. (RR Vol. 5 pg. 73, pg. 74, line 1) MOAB's counsel failed to solicit even a scintilla of evidence of any defective design. On direct, counsel for MOAB questioned Ms. Madsen about a single IBWC comment to the 75% design submittal by ALS 88 which was completely unrelated to a defective design. (RR vol.4 pg. 65, lines 1-25-pg. 66, lines 1-17)

Not only did Ms. Madsen fail to identify a single design flaw in the IBWC comments to the 75% design completion documents on direct examination, she admitted on cross that

Page | 15

she had no knowledge of any structural flaw in the design itself. (RR Vol. 5 pg. 73-74, lines 22-1) MOAB's counsel did not illicit any evidence of defective design from Ms. Sequoyah, a licensed architect, or from any other licensed architect. However, Ms. Sequoyah, who is a licensed architect, addressed every single IBWC comment to the 75% design completion documents on cross-examination and testified that not a single comment identified a design flaw. (RR Vol. 6 pg. 102, lines 6-25 – pg. 107, lines 1-23)

The evidence conclusively established that ALS 88 was not required to provide design documents in AutoCAD software format as asserted in MOAB's lawsuit. ALS 88 was not required to provide design documents in AutoCAD software format to MOAB under any circumstance and was only required to provide the IBWC with the design documents in AutoCAD software format upon "submission of the corrected 100% and compliance confirmed back check drawings." (RR Vol. 5 pg. 132, lines 14-21 – pg. 133, lines 6-16 & Defense Ex. 11 @ pg. 29)

**Issue 3: The trial court erred in denying ALS 88's motion for directed verdict on the issue of damages**

The record is completely devoid of any legally sufficient evidence to support the award of damages. Because MOAB pled its claim in negligence and there was no claim of personal injuries or property damage, its damages are in essence economic damages which are generally considered contractual injuries. The accepted rule for measuring contractual injuries is "just compensation" for the loss or damage actually sustained. See Stewart v. Basey, 245 S.W.2d 484, 486 (Tex. 1952); Sharifi v. Steen Auto., LLC, 370 S.W.3d 126, 148 (Tex.App.-Dallas 2012, no pet.).

Contractual damages must be calculated with reasonable certainty. See Murdock v. Hospital, 946 S.W.3d 836, 841 (Tex. 1997). The record must contain legally sufficient evidence of the entire amount awarded. See id and see also Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 51-2 (Tex. 1997) Where damages are contested, the remedy is a new trial. See id at 44. The law distinguishes between uncertainty as to the amount of damages and uncertainty as to the existence of damages. If the existence of damages is uncertain, then they are not recoverable. See Id

The types of damages recoverable for economic injury include benefit of the bargain damages, out of pocket damages, lost profits, loss of credit, and loss of goodwill. Of these, only benefit of the bargain and out of pocket damages are at issue in this case since MOAB offered no evidence of lost profits, loss of credit, or loss of goodwill.

Benefit of the bargain damages are measured by the difference between the value as represented to the plaintiff and the value actually received. These damages are also known as expectancy damages which are measured by (1) loss in value of the defendant's performance, plus (2) any consequential loss, minus (3) any cost or loss the plaintiff avoided by not having to perform under the subject contract. See Qaddura v. Indo-European Foods, LLC, 141 S.W.3d 882, 889 (Tex.App.-Dallas 2004, pet. denied)

Out of Pocket damages are recoverable for a party's reliance on the subject contract. See Sharifi, 370 S.W.3d at 149. Their purpose is to restore the status quo before the contract was made. The measure of reliance damages is equal to the expenditures made by the plaintiff in reliance on the subject contract. See Mistletoe Express Serv. V. Locke, 762 S.W.2d 637, 638 (Tex.App.-Texarkana 1988, no writ); Henry S. Miller Co. v.

Page | 17

Bynum, 836 S.W.2d 160, 163 (Tex. 1992).

A party should plead sufficient facts to provide fair notice of the damages sought. For pleading purposes, actual damages are classified as direct (or general) or consequential (or special). See Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997); See also Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 163 (Tex. 1992). Texas rule of civil procedure 56 requires that special (or consequential) damages be specifically pled. See also Italian Cowboy Partners v. Prudential Ins., 341 S.W.3d 323, 345 (Tex. 2011) Special damages are those that result naturally but not necessarily from a defendant's wrongful conduct. See Arthur Andersen, 945 S.W.2d at 816. A plaintiff that fails to plead for special damages waives the right to recover them. See Harkins v. Crews, 907 S.W.2d 51, 61 (Tex.App.-San Antonio 1995, writ denied)(party not entitled to expenses due to improper pleading)

MOAB pled for its actual damages, but did not specifically plead for any special damages. (CR pgs. 1-10) At trial, Melissa Madsen described MOAB's damages as the amount of money lost on its contract with IBWC. Madsen calculated these damages as the difference between what she spent under the IBWC contract [$929,887.74] and what she was paid by IBWC [$329,383.05] before it terminated MOAB. (RR vol. 6, pg 25) This amount totaled $600,504.69.

**Benefit of the Bargain Damages (Business Damages)**

The measure of benefit of the bargain damages is the difference between the value as represented and the value actually received. See Fortune Prod. v. Conoco, Inc., 52 S.W.3d 671, 681 (Tex. 2000) The particular measure of these damages depends on the

cause of action asserted. In this case, MOAB asserts ALS 88 was negligent in performing its duties under its design contract with MOAB, accordingly it's benefit of the bargain damages, also known as expectancy damages, are measured by the difference between the value of the performance promised and the value of the performance tendered. The measure of damages depends on whether there was substantial, partial, or no performance.

MOAB had to prove benefit of the bargain damages by offering evidence of the value of the architectural plans as represented by ALS 88 and the value of what was actually received by MOAB before MOAB terminated ALS 88 from the project. See W.O. Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988). See also Matheus v Sasser, 164 S.W.3d 453, 462-63 (Tex.App.-Fort Worth 2005, no pet.) Since ALS 88 substantially performed, MOAB was required to account for the value of the performance received.

MOAB offered no evidence of the value of the architectural plans as represented by ALS 88 and what it actually received. MOAB offered no evidence of any additional costs it incurred to retain a new architect, and offered no evidence of any costs it avoided as a result of not having to fully perform its obligation under the contract. MOAB was not entitled to the damages awarded because any act or omission by ALS 88 did nothing more than furnish a condition which made MOAB's termination possible and/or was too remote to MOAB's termination from the project almost a year and a half later.

**Out of Pocket Damages (Reliance damages)**

The measure of out of pocket damages is the difference between the amount the

plaintiff paid and the value of what plaintiff received but should not compensate for lost profits. See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 49 (Tex. 1998). To establish out of pocket damages MOAB had to establish both the amount it paid and the value it received. MOAB offered no evidence of the amount paid to ALS 88 versus the value it received from ALS 88. Further, MOAB offered no evidence of any costs that were avoided as a result of being terminated from the contract.

**MOAB failed to plead for special damages**

At trial, MOAB did not assert its damages pursuant to the design contract between itself and ALS 88. Instead Ms. Madsen claimed MOAB was damaged as a result of being terminated from the project by IBWC which she attributed to the acts of ALS 88. Ms. Madsen identified MOAB's damages as the difference between what MOAB expended under the Design/Build contract with IBWC and the amount received under that contract.

MOAB offered no evidence to establish that these types of damages were contemplated by the parties to be a probable result of any breach by ALS 88 at the time the parties entered into the design contract. (RR Defense Ex. 6) Special damages are those that result naturally but not necessarily from a defendant's wrongful conduct. See Arthur Andersen, 945 S.W.2d at 816. Because the damages claimed by MOAB don't necessarily result from the negligent acts claimed, MOAB was required to specifically plead for these damages. Having failed to do so, they are waived.

For all of the reasons outlined above, MOAB failed to establish that any damages claimed were the proximate cause of any act or omission on the part of ALS 88, it failed to establish the requisite elements of its damage claim, and it failed to establish the

Page | 20

damages awarded were foreseeable as a matter of law.

**Issue No. 4     The trial court erred in admitting exhibits, overruling objections, and excluding proffered testimony**

The trial court erred in admitting certain exhibits which constitute hearsay and were not authenticated by a business records affidavit or testimony of a custodian of records. The trial court erred in overruling objections and admitting testimony which called for hearsay and speculation. Finally, the trial erred in excluding the testimony of a fact witness who was involved in the Falcon Dam project.

## EXHIBITS

*Plaintiff's Exhibit 5: Email from former MOAB employee to ALS 88/Annastacia Sequoyah (RR Ex. Vol. pgs. 242-244)*

ALS 88 objected to this exhibit on the basis that it was not a statement of either party, but a statement of a former employee of MOAB who Ms. Madsen testified she terminated during the course of the project. MOAB's counsel argued it was a business record and the court overruled the objection. (RR Vol. 2 pgs. 27-29)

Tex. R. Evid. 803(6) allows the admission of memos, reports, records or data compilations made at or near the time, by … a person with knowledge, if kept in the course of a regularly conducted business activity… all as shown by the testimony of the custodian or other qualified witness, or by an affidavit that complies with rule 902(10)… The trial court erred in admitting this exhibit because neither the custodian of records or other qualified witness established the requirements of admissibility under rule 803(6).

*Plaintiff's Ex. 6: Attachment to Email (RR Ex. Vol. pgs. 244-251)*

ALS 88 objected to the attachment to Exhibit 6 which was a modified version of

IBWC's 75% design review comments on the basis they were not as represented in the cover e-mail and it was not a business record of MOAB. (RR Vol. 2 pgs. 29-33) The attachment to exhibit 6 was not a document generated by MOAB and it was not authenticated by a custodian of IBWC or an affidavit filed in advance of trial.

The trial court erred in admitting this evidence as a business record of MOAB. See Ortega v. CACH, LLC, 396 S.W.3d 622, 629-30 (Tex.App.-Houston [14th Dist.] 2013, no pet.)(third party documents can become business records of an organization if kept in course of testifying witness's business and are the type of records typically relied upon) Since no witness testified to these facts, the trial court erred in admitting the attachment to Exhibit 6.

*Plaintiff's Exhibit 12: Email between former MOAB employee Bruce Towne and ALS 88*

ALS 88 objected to this exhibit on the basis that it was a statement of a former employee of MOAB who Ms. Madsen testified she terminated during the course of the project. The court overruled the objection. (RR Vol. 2 pg. 36) The trial court erred in admitting this exhibit because the custodian of records or other qualified witness failed to establish the requirements of admissibility under rule 803(6).

*Plaintiff's Exhibit 13: IBWC comments to 75% design (RR Ex. Vol. pgs 257-262)*

ALS 88 objected to this exhibit on the basis of hearsay since MOAB offered no custodian of record from IBWC and no other qualified witness to establish the authenticity of this exhibit. (RR Vol. 2 pg. 36) For the same reasons stated above, the trial court erred in admitting hearsay evidence without requiring MOAB to comply with the requirements of Tex. R. Evid. 803(6).

*Plaintiff's Exhibit 22: IBWC email to MOAB (RR Ex. Vol. pgs 281)*

ALS 88 objected to this exhibit on the basis of hearsay since MOAB offered no custodian of the record from IBWC and no other qualified witness to establish the authenticity of this exhibit. (RR Vol. 2 pg. 36) For the same reasons stated above, the trial court erred in admitting hearsay evidence without requiring MOAB to comply with the requirements of Tex. R. Evid. 803(6).

*Plaintiff's Exhibit 25: IBWC email to MOAB (RR Ex. Vol. pgs 285)*

ALS 88 objected to this exhibit on the basis of hearsay since MOAB offered no custodian of the record from IBWC and no other qualified witness to establish the authenticity of this exhibit. (RR Vol. 2 pg. 40) For the same reasons stated above, the trial court erred in admitting hearsay evidence without requiring MOAB to comply with the requirements of Tex. R. Evid. 803(6).

**TESTIMONY**

On direct examination, Ms. Madsen was asked for examples of how ALS 88's 75% design completion documents had created problems for MOAB, and when she stated "the owner because of the chain of command naturally assumed" counsel for ALS 88 objected because the question called for speculation about what the owner assumed. (RR Vol.4 pg. 59, lines 16-25)

Counsel for MOAB argued exceptions to hearsay including operative facts and state of mind of the owner as a result of numerous meetings. (RR Vol. 5 pg. 60, lines 1-6) Counsel for ALS 88 countered that Ms. Madsen could not testify to what the owner said, but the court overruled the objection. (RR Vol. 5 pg. 60, lines 7-13)

Similarly, Ms. Madsen again started to testify what the IBWC thought when they received the 75% design completion documents and counsel for ALS 88 objected on the basis of speculation. MOAB's counsel asserted it was state of mind, to which ALS 88's counsel argued it wasn't her state of mind. Although MOAB's counsel asked to reword the question, the trial court overruled the objection. (RR Vol. 5 pg. 60, lines 15-25 – pg. 61, lines 1-7)

Finally, Ms. Madsen was asked if the 75% design drawings created expectations on the part of the owner to which counsel for ALS 88 objected on the basis of hearsay and speculation; the court overruled the objection. (RR Vol. 5 pg. 62, lines 22-25 – pg. 63, lines 1-7)

MOAB's counsel argued Ms. Madsen's testimony was not excluded by the hearsay rule pursuant to state of mind and operative facts exceptions. MOAB's assertion that an operative facts exception to the hearsay rule authorized Ms. Madsen's hearsay and speculative testimony is without merit. There is no "operative facts" exception to the hearsay rule.

Tex. R. Evid. 803(3) excepts a statement of the declarant's then existing state of mind, such as intent or motive, but not a statement of memory or belief to prove the fact remembered or believed unless that statement pertained to a will. The state of mind exception does not apply to any of the objectionable testimony since Ms. Madsen is not the declarant, i.e. the person who made the statement out of court. Secondly, the statement was offered to prove the fact remembered or believed.

Statements admitted under rule 803(3) are typically spontaneous remarks about pain or sensation, not readily observable by third persons, while the sensation is being experienced and does not extend to statements of past facts or conditions. See Power v. Kelly, 70 S.W.3d 137, 141 (Tex.App.-San Antonio 2001, pet. denied) The trial court erred in overruling the stated objections on the basis of Tex. R. Evid. 803(3).

**Proffered Testimony of Cullen Patrick Coltrane/professional architect & fact witness**

ALS 88 offered the testimony of Cullen Patrick Coltrane, a subcontractor for ALS 88 on the Falcon Dam project on the basis he was identified as a subcontractor for ALS 88 on the project and as a rebuttal witness to Ms. Madsen's testimony regarding the inability of MOAB to provide a budget from the beginning of the project. MOAB objected because Mr. Coltrane had not been specifically identified in the responses to request for disclosure and argued ALS 88 was required to identify him as a rebuttal witness. ALS 88 argued good cause existed to allow his testimony because MOAB was not surprised by this witness, he worked as a subcontractor on the project and was identified in one of the exhibits in the case. (RR Vol. 6 pgs. 153-161)

ALS 88's responses to requests for disclosure identified persons with knowledge of relevant facts as follows: MOAB Construction and its, employees, agents, representatives and subcontractors; ALS 88 and its employees, agents, representatives and subcontractors; and IBWC and its employees, agents, representatives and subcontractors. (APP Tab 5) MOAB filed no motion to compel requesting ALS 88 to supplement its responses. The court excluded his testimony (RR Vol. 6 pgs. 153-161) and ALS 88 made an offer of proof. (RR Vol. 6 pg. 161, lines 14-25)

A party may introduce rebuttal or impeachment evidence even if not produced in discovery if the evidence is solely for impeachment or rebuttal, its use couldn't have been anticipated, and the evidence is not responsive to a direct discovery request. See Aluminum Co, of Am. v. Bullock, 870 S.W.2d 2, 4 (Tex. 1994), Tinkle v. Henderson, 777 S.W.2d 537, 540 (Tex.App.-Tyler 1989, no writ)(fact witness offered to rebut matter that arose during trial)

In this case, ALS 88 argued that Mr. Coltrane's testimony was being offered to rebut Ms. Madsen's testimony that MOAB could not prepare a cost loaded budget at the beginning of the project as it was required to do under its contract with ALS 88 and as expected by the IBWC. (RR Vol. 6 pgs. 153-161) ALS 88 was not required to identify Mr. Coltrane as a rebuttal witness because ALS 88 could not anticipate that MOAB would deny its contractual obligations at trial, and there was no specific discovery request regarding the proffered testimony of Mr. Coltrane. Even if the trial court did not err in excluding his testimony for failing to specifically identify him in response to disclosures, it was error to exclude his testimony as a rebuttal witness.

## PRAYER

ALS 88 asserts for all of the reasons stated above, the jury verdict in favor of MOAB be reversed and rendered in favor of ALS 88 because the economic loss doctrine forecloses MOAB's negligence claims as a matter of law. Separately ALS 88 asks that the verdict be reversed and rendered in favor of ALS 88 because MOAB offered no evidence of the duty owed by an architect or that the duty was breached. Separately, ALS 88 moves for reversal and remand on the issue of damages and/or trial court error in

Page | 26

admitting exhibits and testimony which constituted hearsay and speculation and in excluding the testimony of a rebuttal witness. ALS 88 prays for its costs and attorney fees and all other relief at law or in equity to which it may justly be entitled.

Respectfully submitted this the 14th day of August, 2015.

Law Office of Regina Bacon Criswell
Carriage Place
7803 Bent Briar
San Antonio, TX  78250
210-775-1155 (ofc)
210-251-2071 (fax)

/S/  *Regina B. Criswell*_____
Regina Bacon Criswell
Texas Bar No. 01496580

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and forgoing was served on the following in accordance with the Tex. R. App. Proc. on the 14th day of August, 2015 as indicated below:

Thomas C. Hall                                              Via e-file
*Attorney for MOAB Construction*

/S/  *Regina B. Criswell*____
REGINA BACON CRISWELL

## CERTIFICATE OF WORD COUNT

This is to certify that the word count of Appellant's Brief exclusive of excepted parts is 7130 according to the computer program used to prepare the brief.

/S/  *Regina B. Criswell*____
REGINA BACON CRISWELL