**Earl POWER, Individually and on behalf of Marguerite POWER, Deceased, Appellant,**

v.

**Jerry KELLEY, M.D. and William O. Kirk, M.D., Appellees.**

No. 04–00–00650–CV.

Court of Appeals of Texas, San Antonio.

June 6, 2001.

Dissenting Opinion on Denial of Rehearing Nov. 21, 2001.

Thomas C. Hall, Hall & Bates, L.L.P., San Antonio, for Appellant.

George G. Brin, Brin & Brin, P.C., San Antonio, Linda C. Breck, Brin & Brin, P.C., Corpus Christi, Robert B. Biechlin, Jr., Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for Appellee.

Sitting: HARDBERGER, Chief Justice, STONE, and GREEN, Justices.

## OPINION

HARDBERGER, Justice.

Earl Power ("Earl"), Individually and on Behalf of Marguerite Power ("Marguerite"), appeals a summary judgment granted in favor of Jerry Kelley, M.D ("Kelley") and William O. Kirk, M.D. ("Kirk") in a medical negligence case. Earl raises two points of error in his brief, contending the trial court erred in striking the affidavit of Brenda Power ("Brenda") and in granting the summary judgment. We overrule Earl's point of error regarding Brenda's affidavit. Because Earl's points of error only challenge the summary judgment as it relates to the claims made by Earl on behalf of Marguerite, we affirm the trial court's judgment as to Earl's individual claims. We reverse the summary judgment as to the claims made by Earl on behalf of Marguerite, and we remand those claims to the trial court for trial.

### Background

Marguerite was eighty-three years old when she was referred by her primary physician to Kirk for an evaluation of two episodes of amaurosis fugax (brief loss of vision). Based on his evaluation and tests, Kirk recommended carotid endarterectomy surgery; however, he first referred Marguerite to Christopher Casey, M.D. for a cardiac evaluation. Marguerite was admitted to the hospital for the cardiac evaluation on October 25, 1995. After Marguerite experienced angina during the cardiac catheterization, Kelley was called for a consultation. Kelley diagnosed critical coronary artery disease requiring a three vessel coronary artery bypass graft, which Kelley performed on October 26, 1995.

Kelley did not order or review a chest x-ray prior to the operation. Although a chest x-ray is listed as one of the items to be obtained in the hospital's standard admission orders that were used in admitting Marguerite to the hospital for the cardiac evaluation, someone had crossed out the chest x-ray, so no pre-operative chest x-ray was taken.

Post-operative x-rays were taken on October 26, October 27, and October 28, 1995. The radiologist's reports for the x-rays mention a large mass in Marguerite's left lung. The report for the x-ray taken October 26, 1995, states, "loculated fluid and hematoma could have a similar appearance, though, malignancy can not [sic] be excluded." The report for the x-ray taken October 27, 1995, states, "large mass density possibly representing loculated fluid or hematoma (carcinoma can still not be excluded without availability of the immediate pre-operative films)." Finally, the report for the x-ray taken October 28, 1995, states, "persistent mass like density in the left midchest which may represent a pseudotumor parenchymal lesion." Kelley diagnosed the mass as fluid caused by the operation. Kelley did not follow-up on the mass or inform Marguerite's primary physician.

On December 14, 1995, Kirk performed a left side carotid endarterectomy. Kirk reviewed the radiologists' reports from the October post-operative x-rays prior to performing the surgery. Although Kirk or-

dered a pre-operative x-ray, he did not review the x-ray prior to the surgery. After reviewing the post-operative x-ray taken on December 15, 1995, Kirk informed Marguerite of the mass in her lung and called a pulmonologist to evaluate Marguerite. Marguerite was diagnosed with terminal lung cancer.

On January 19, 1996, Kirk wrote Marguerite's primary physician a letter regarding his follow-up appointment with Marguerite. Marguerite informed Kirk that she was no longer experiencing any symptoms from a coronary or carotid standpoint. Although Marguerite had 70% stenosis in her right carotid, she was asymptomatic. The letter further stated:

> We discussed the course we should take with regard to [the right carotid], and if it weren't for her lung mass, we would certainly pursue this one an elective basis, however we will wait until she becomes symptomatic, and at that point we will discuss the situation as to whether a right carotid endarterectomy would be indicated.... She has opted to not treat her lung mass at all, and I feel this is a reasonable course of action.

Approximately six months after her surgeries, Marguerite died of lung cancer. On December 10, 1997, Marguerite's son, Earl, filed a medical negligence claim against several physicians. Ultimately, Earl only proceeded with the claims against Kelley and Kirk.

Kelley and Kirk filed a motion for summary judgment on both traditional and no-evidence grounds. The motion asserted there was no evidence with regard to causation. Specifically, the motion contended that there was no evidence that Marguerite would not have proceeded with the surgeries if she had known of the lung cancer. The motion also stated that Earl had alleged no damages for which he could recover in his individual capacity. Earl

filed a response, asserting that Brenda's affidavit and Kirk's deposition testimony provided evidence that Marguerite would not have proceeded with the surgeries if she had known of the lung cancer. Kirk filed an objection to Brenda's affidavit under rules 802 and 601 of the Texas Rules of Evidence. The trial court sustained Kirk's objection and granted summary judgment in favor of Kelley and Kirk. Earl timely filed this appeal.

## EXCLUSION OF AFFIDAVIT

In his second point of error, Earl complains that the trial court erred in striking Brenda's affidavit which was attached to Earl's response to the motion for summary judgment. Brenda is Earl's wife. In her affidavit, Brenda stated:

> I personally knew Marguerite Power before she died. I heard her say in person prior to her death that, had she known of the existence of the lung cancer that ultimately took her life, before the procedures performed by Drs. Casey, Kirk, and Kelley, that she would not have had those procedures performed.

In his brief, Earl contends that the statement was admissible under rule 803(3) or rule 803(4).

We review rulings concerning the exclusion of summary judgment evidence under an abuse of discretion standard. *See Barraza v. Eureka Co.*, 25 S.W.3d 225, 228 (Tex.App.—El Paso 2000, pet. denied); *Ho v. University of Texas at Arlington*, 984 S.W.2d 672, 680 (Tex.App.—Amarillo 1998, pet. denied). Rule 802 of the Texas Rules of Evidence excludes hearsay or statements, other than those made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. *See* TEX.R.EVID. 801, 802. Earl does not contend that Brenda's statement was not hearsay; Earl asserts that the statement

was admissible as an exception to the hearsay rule.

▮▮ Rule 803(3) excepts statements of a declarant's then existing state of mind from the hearsay rule. *See* TEX.R. EVID. 803(3). "Statements admitted under this exception are usually spontaneous remarks about pain or some other sensation, made by the declarant while the sensation, not readily observable by a third party, is being experienced." *James v. Texas Dept. of Human Services,* 836 S.W.2d 236, 243 (Tex.App.—Texarkana 1992, no writ); *see also Ochs v. Martinez,* 789 S.W.2d 949, 959 (Tex.App.—San Antonio 1990, writ denied). "The exception does not extend to statements of past external facts or conditions." *James,* 836 S.W.2d at 243; *see also Ochs,* 789 S.W.2d at 959. Brenda's statement does not relate to any pain or sensation being experienced by Marguerite but whether Marguerite would have undertaken the two surgical procedures if she had known of cancer. This is a statement relating to a past external fact which is not excepted under rule 803(3).

▮ Rule 803(4) excepts statements made for the purposes of medical diagnosis or treatment from the hearsay rule. *See* TEX.R.EVID. 803(4). In this case, the statement made to Brenda was not made for purposes of Marguerite's diagnosis or treatment. It was a statement regarding her past treatment. Therefore, the statement is not excepted under rule 803(4).

The trial court did not abuse its discretion in excluding Brenda's affidavit. Earl's second point of error is overruled.

## CAUSATION

The motion for summary judgment requests summary judgment based on the causation element of Earl's claim under both traditional summary judgment standards and no evidence summary judgment standards. Under traditional summary judgment standards, a party moving for summary judgment has the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). If the defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on that element. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex.App.—Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon,* 690 S.W.2d at 549. All inferences are indulged in favor of the non-movant, and all doubts are resolved in his favor. *Id.*

▮ We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied). We look at the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *Moore,* 981 S.W.2d at 269. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

Earl testified in his deposition that he did not know whether Marguerite would

have had the surgeries if the cancer had been diagnosed. Earl stated that whether Marguerite would have undertaken the surgeries would depend on the extent of the cancer and whether it was treatable or not. Earl stated that Marguerite rejected treatment for the cancer because she had already been put through enough pain. Brenda testified in her deposition that Marguerite had stated that she wished she had known of the cancer prior to the surgeries so she could have made an informed choice. However, Brenda admitted that Marguerite never stated what her choice would have been.

Kirk referenced in his January letter the possibility that Marguerite would undertake the right carotid endarterectomy if she became symptomatic. Kelley and Kirk rely on this as evidence that Marguerite even considered a third surgery as a possibility despite the cancer. Earl relies on this as evidence that Marguerite decided not to undertake surgery in view of her cancer.

In order to defeat summary judgment, Power was required to show evidence of a "reasonable probability" that Marguerite's injuries were proximately caused by the negligence of Kelley and Kirk. *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 511 (Tex.1995). Thus, Power was required to show that the failure by Kelley and Kirk to obtain and/or examine pre-operative chest x-rays was a substantial factor in bringing about Marguerite's harm. *Id.*

The crux of Earl's complaint is that Kelley and Kirk performed unnecessary surgeries on Marguerite. Earl's expert, Dr. Michael Rothkopf, supported this complaint with testimony that medical therapy should have been used in place of the surgeries that were performed.

Kirk correctly notes in his brief that a complaint that a physician performed an unnecessary surgery can form the basis of a cause of action for medical negligence but not a claim relating to informed consent. *See Neeble v. Sepulveda,* 989 S.W.2d 390, 390 (Tex.App.—Houston [1st Dist.] 1999, no pet.); *Patton v. Saint Joseph's Hosp.,* 887 S.W.2d 233, 247 (Tex.App.—Fort Worth 1994, writ denied); *Marling v. Maillard,* 826 S.W.2d 735, 738 (Tex.App.—Houston [14th Dist.] 1992, no writ). However, both Kirk and Kelley seek to impose the two-prong test for causation applicable in informed consent cases to this case by arguing that Earl must prove that disclosure of the cancer would have resulted in a decision against the surgeries. *See Greene v. Thiet,* 846 S.W.2d 26, 31 (Tex.App.—San Antonio 1992, writ denied). Kirk and Kelley have cited no Texas case that requires such a showing in a cause of action based on medical negligence for the performance of unnecessary surgery.

In *Golden v. Stein,* the Alabama Supreme Court considered an appeal from a summary judgment involving claims that a laser procedure was unnecessary and had been performed without the plaintiff's informed consent. 670 So.2d 904, 906 (Ala. 1995). The plaintiff introduced expert testimony that performing the laser surgery under the circumstances that existed was a breach of the standard of care. *Id.* at 907–08. The court then discussed the evidence relating to causation. The court first noted that although proximate cause must ordinarily be established by expert testimony in most medical malpractice cases, expert testimony is only required because the issue of causation is considered "beyond the ken of the average layman." *Id.* at 907. However, the court concluded:

> But in cases like this one, involving allegations that a defendant performed unnecessary medical procedures, the issue of proximate causation is not always "beyond the ken of the average layman." Clearly, the average layman, without the

assistance of an expert, can recognize a causal connection between the performance of an unnecessary operation and most items of harm or injury claimed by the plaintiffs in this case. The cost of the unnecessary procedure, any provable pain and suffering or loss of consortium associated with the unnecessary procedure, and any wages that can be proven to have been lost during the normal recovery period for such an operation would constitute harm or damage the proximate cause of which would be "within the comprehension of average laymen."

*Id.* at 908; *see also K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 361 (Tex.2000) (affirming exclusion of expert testimony where causation issue was within average juror's common knowledge and did not require a scientific or technical explanation); *Patton*, 887 S.W.2d at 242 (asserting expert testimony is not required as proof in a medical malpractice action for matters of common knowledge or matters within the experience of a layperson).

▬▬ A complaint that a physician performed a surgery that he should not have performed or should have performed differently if he had done preoperative testing required by the applicable standard of care is a negligence issue, not an informed consent issue. Causation may be proven by evidence showing that a surgical procedure was performed that was contraindicated or that preoperative testing was warranted and that testing was likely to show the procedure should not have been performed or should have been performed differently.

▬▬ Because Earl's claims are for negligence based on the performance of unnecessary surgeries, Earl is not required to meet the causation requirements for an informed consent claim. The testimony of Dr. Rothkopf was sufficient to defeat summary judgment. Dr. Rothkopf established that based on their failure to perform adequate preoperative evaluation and testing, Kelley and Kirk performed two surgeries on Marguerite that were contraindicated. Dr. Rothkopf stated that Marguerite's heart condition was not immediately life threatening and medical therapy, including the use of beta blockers, should have been used instead of the bypass surgery. Dr. Rothkopf further stated that medical therapy should have been used in view of Marguerite's condition rather than the carotid surgery. The failure by Kelley and Kirk to properly obtain and review the requisite x-rays caused them to undertake contraindicated surgical procedures in place of the medical therapy. No additional evidence was required to show that the performance of the unnecessary surgeries caused damage in the form of the cost of the unnecessary surgeries and any provable pain and suffering because causation can be inferred from evidence that the surgeries were unnecessary or contraindicated.

## CONCLUSION

In addition to the causation issue, the motion for summary judgment challenged Earl's ability to recover individually because none of the alleged damages were recoverable by Earl in his individual capacity. Because Earl does not raise any issues in his brief challenging this ground, the summary judgment as to Earl's individual claims is affirmed. The summary judgment as to the claims asserted on behalf of Marguerite is reversed, and those claims are remanded to the trial court for trial.

Dissenting opinion on Motion for Rehearing: Paul W. Green, Justice.

GREEN, Justice, dissenting on motion for rehearing.

After reviewing the briefs on rehearing, I am persuaded I was wrong to join the panel decision. Accordingly, I respectfully dissent to the refusal of the majority to grant rehearing.

The majority relies on Dr. Rothkopf's testimony to show the surgeries were unnecessary due to Marguerite's terminal condition and, by inference, that damages resulted. However, there is a gaping hole in the majority's analysis. The majority relies on the unfounded assumption that Marguerite would not have had the surgery if she had known of her terminal cancer, which assumption is necessary to the success of appellant's claim.

Even if there is a fact issue regarding the need for surgical intervention in light of Marguerite's terminal condition and setting aside the question of whether damages can be inferred from the fact of unnecessary surgery, what has been overlooked is that *the ultimate decision whether to forego or proceed with surgery rested exclusively with Marguerite.*

It is reasonable that Marguerite, aware of her terminal cancer, would have decided to forego surgery; however, it is also reasonable that she would have decided to proceed with the surgery. Marguerite knew her coronary condition, if left untreated, was severe enough to risk a debilitating heart attack or stroke. Indeed, Dr. Kelley was so alarmed by Marguerite's coronary artery disease, he performed bypass surgery within a day of discovering her condition. The endarterectomy also served to reduce the risk of stroke. Marguerite might have decided to proceed with the surgery in spite of her cancer to avoid the risk of a debilitating heart attack or stroke in the time she had left.

No witness had any knowledge of Marguerite's wishes or intentions in this regard so, at best, any assumption about what Marguerite would have done had she known of her terminal illness is based on no more than conjecture. *See Litton Indus. Products, Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984) ("When circumstances are consistent with either of [] two facts and nothing shows that one is more probable than the other, neither fact can be inferred."). It is always difficult, and often impossible, to determine in hindsight the true wishes of a person who has become deceased. There are obvious evidentiary problems. But without clear and competent evidence, any post-mortem attempt to determine the decedent's actual intent is a meaningless exercise. Indeed, this court has said so. *See Longaker v. Evans,* 32 S.W.3d 725, 735 (Tex.App.-San Antonio 2000, pet. withdrawn).

In *Longaker v. Evans,* sitting *en banc,* we rejected as mere speculation any assumption as to the decedent's motives or intent when she terminated a trust whose proceeds would have benefitted her son but instead went to the brother "advising" her to terminate the trust. *Id.* at 734–35. We noted that during her lifetime the decedent was empowered to dispose of her assets in any way she wished, even in the face of specific bequests in her will. *Id.* In the absence of competent evidence demonstrating she never intended to divest her son of the trust assets, we held it was improper to make that assumption. *Id.*

Although the facts are different, the same principle applies to this case. There is simply no evidence demonstrating what Marguerite would have decided to if she had known of her cancer. Any attempt to infer or assume what she would have done is improper. *See Longaker,* 32 S.W.3d at 735. Marguerite would not have been legally harmed had she known about her

cancer when she proceeded with the surgeries. Since it is unknown whether Marguerite would have proceeded with the surgeries if she had known about the cancer, the appellant has failed to present evidence establishing a causal connection between the acts of Drs. Kelley and Kirk and any harm suffered. Accordingly, the motion for rehearing should be granted, the panel opinion and judgment should be withdrawn and revised, and the trial court's summary judgment should be affirmed.