ACCEPTED
04-15-00096-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/6/2015 4:35:54 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00096-CV

## IN THE COURT OF APPEALS
## FOURTH COURT OF APPEALS DISTRICT

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
10/6/2015 4:35:54 PM
KEITH E. HOTTLE
Clerk

## ALS 88 DESIGN BUILD, LLC

## v.

## MOAB CONSTRUCTION COMPANY

Appeal from the 438th Judicial District Court

Bexar County, Texas

Honorable Gloria Saldana, Judge Presiding

## APPELLANT'S REPLY BRIEF

**LAW OFFICE OF REGINA BACON CRISWELL**
Carriage Place
7803 Bent Briar
San Antonio, Texas  78250
TELEPHONE: (210) 775-1155
FACSIMILE: (210) 251-2071
**COUNSEL FOR APPELLANT**

## ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-15

    ISSUE NO. 1         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-4
        Whether the economic loss rule forecloses MOAB's negligence claim

    ISSUE NO. 2         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-9
        Whether MOAB was required to establish any duty owed by ALS 88
        and/or any breach of that duty by expert testimony

    ISSUE NO. 3         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10
        Whether MOAB offered legally sufficient evidence of damages

    ISSUE NO. 4         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-15
        Whether the trial court erred in admitting exhibits; overruling objections;
        and/or excluding proffered testimony

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# INDEX OF AUTHORITIES

Case Corp. v. Hi Class Bus. Sys. of Am.,Inc., 184 S.W.3d 760, 782 (Tex.App.-Dallas, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

1/2 Price Checks Cashed v. United Auto. Ins. Co., 344 S.W.3d 378, 387 (Tex.2011)--- **4**

FFE Transp. Servcs. V. Fulgham, 154 S.W.3d 84, 90 (Tex. 2004)---------------------- **4**

Guevara v.Ferrer, 247 S.W.3d 662 (Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . **4,5**

Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.1986)-------------------- **3**

Lamar Homes, Inc. v. Mid–Continent Cas. Co., 242 S.W.3d 1, 12 (Tex.2007)------- **4**

LAN/STV, et al v. Martin K. Eby Construction Company, Inc., 435 S.W.3d 234 (Tex. 2014)---------------------------------------------------------------------------------- 1,**2**

Med. City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d 55, 61 (Tex.2008)-------------- **4**

Power v. Kelly, 70 S.W.3d 137, 141 (Tex.App.-San Antonio 2001, pet. denied)---- **14**

Restatement, T.D. 1, §3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

Settlement Funding, LLC v. RSL Funding, LLC, 3 F.Supp. 3d 590 (SDTX-Houston, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

SW Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex.1991)--------------------- **3**

Wansey v. Hole, 379 S.W.3d 246, 248 (Tex.2012) (per curiam)--------------------- **3**

**STATUTES and RULES**

Tex. R. Evid. 803(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

**SUPPLEMENTAL APPENDIX**
Termination Letter                                                                    Exhibit 6

## STATEMENT OF CASE

MOAB disagrees with ALS 88's statement of the case in a couple of respects; first as to whether MOAB terminated ALS 88 for its own convenience, and second that MOAB was unable to complete the project through no fault of ALS 88. Although neither of these factual disputes is relevant to resolution of the issues pending before this court, ALS 88 replies to MOAB as follows.

First, ALS 88's Annastacia Sequoyah testified in relevant part that ALS 88 was terminated without cause and that MOAB had no reason to terminate ALS 88. (RR Vol. 6, pgs. 119-120) (SUPP. APP. Ex. 6)

Second, MOAB's Melissa Madsen admitted the show cause and termination letters from IBWC cite MOAB's failure to construct the foundation as the reason for its decision to terminate MOAB and that ALS 88 had nothing to do with MOAB's inability to do so. (RR Vol. 5 pg. 110, lines 18-25 – pg. 111, lines 1-13)

## REPLY ARGUMENT

### Issue 1.    The economic loss doctrine absolutely forecloses MOAB's negligence claim.

MOAB argues the economic loss doctrine doesn't foreclose it's negligence claim because professional malpractice cases are an exception to its application citing LAN/STV, A Joint Venture of Lockwood, Andrews & Newman, Inc. and STV Inc., v. Martin K. Eby Construction Company, Inc., 435 S.W.3d 234, 243-44 (Tex. 2014). However, MOAB ignores the extensive discussion of construction project disputes and the ultimate conclusion in the case.

Page | 1

In <u>LAN/STV</u>, the owner of the project Dallas Area Rapid Transportation (DART) contracted directly with the architect LAN/STV to prepare plans for a light rail system. DART separately contracted with EBY Construction, who relied upon the architect's plans. Ultimately the project encountered problems and delays and EBY sued LAN/STV for its increased costs on a theory of negligent misrepresentation-errors- in the plans and specifications. The issue was whether EBY could recover from the architect, LAN/STV, in tort when there was no contractual privity between EBY and LAN/STV. The court concluded because of the nature of construction contracts liability in negligence against the architect was barred by the economic loss doctrine.

In relevant part the <u>LANS/STV</u> court stated as follows:

> "Analyzing the economics of the construction site, Professor Powers proposed this result more than twenty years ago, and we quote his analysis at length:
>
> In fact, construction disputes are good candidates for precluding recovery under the "economic loss" rule, because the parties are in a position to protect themselves through bargaining. Though the parties do not necessarily have contracts with each other, they typically all have contracts with the owner, or subcontracts with someone who does have a contract with the owner. If contractors want to be protected, they can insist on that protection from the owner who will get protection from the architect. The contractors can take less compensation from the owner, so that the owner can in turn compensate the architect for the added risk.
>
> The issue is who will buy business protection insurance. It makes sense to let the parties bargain about this rather than impose a "legal" solution.
>
> There are two additional reasons to decline imposing a general tort duty on architects and engineers. First, imposing the risk of economic loss on the architect requires the architect to pass the cost along to the owner. The owner will then pass the cost along to the various contractors and subcontractors. Different contractors and subcontractors have different susceptibilities to economic loss, but the owner has no way of distinguishing among the various contractors and subcontractors. Some contractors and subcontractors will benefit greatly, some will not. Yet all will pay the price for this protection, not in proportion to their benefit from the protection, but roughly in proportion to the dollar value of their services. This will

lead to a cross-subsidization. Contractors and subcontractors who are not subject to losses from delays effectively "pay" for protection that they do not need. In effect, they subsidize other contractors and subcontractors who are more susceptible to this type of loss.

This inequity could be remedied if the owner could determine which contractors and subcontractors benefit most and then charge them more by paying them less. But this would require the owner to be in the business of evaluating contractors' susceptibility to economic loss, which would effectively put the owner in the insurance evaluation business. Individual contractors and subcontractors are in a better position to evaluate their own susceptibility to economic loss and determine whether to buy insurance. Thus, fairness and efficiency support leaving these losses on the contractors and subcontractors, who can decide for themselves whether and for how much to insure. I assume this is part of the explanation why current contractual practice does not shift these obligations to the architect.

Second, contracts between owners and supervising architects can vary. Sometimes the supervising architect might be hired for the benefit of the contractors and subcontractors. However, in most cases, the architect is hired either as a neutral arbitrator or, most often, as the agent of the owner. If the architect is supposed to be neutral or to operate as the agent of the owner, negligence principles—which would be decided by the jury after the fact—would create a chilling effect on the architect's neutrality or fiduciary duty to the owner."

This case is different than the typical vertical construction contract as contemplated in the LAN/STV case because the general contractor and the architect contracted directly. However, that fact alone compels application of the economic loss doctrine since the professional services at issue were specifically contracted for by the parties.

"There is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." See Restatement, T.D. 1, § 3. See also Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.1986)(when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone); SW. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex.1991)(when the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract); Wansey v. Hole, 379 S.W.3d 246, 248 (Tex.2012) (per curiam)(a duty in tort does not lie when the only injury claimed

is one for economic damages recoverable under a breach of contract claim); 1/2 Price Checks Cashed v. United Auto. Ins. Co., 344 S.W.3d 378, 387 (Tex.2011)(under the economic loss rule a claim sounds in contract when the only injury is economic loss to the subject of the contract itself); Med. City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d 55, 61 (Tex.2008)(when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract); Lamar Homes, Inc. v. Mid–Continent Cas. Co., 242 S.W.3d 1, 12 (Tex.2007)(the economic-loss rule generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract). To hold otherwise would be to ignore well established precedent.

**Issue 2.  MOAB offered no evidence that ALS 88 was negligent & evidence conclusively negated each act of negligence asserted by MOAB.**

### A.  Duty Owed by ALS 88

MOAB asserts it was not required to offer expert testimony to establish the standard of care or duty owed by ALS 88, a professional architect, or that ALS 88 breached that standard of care or duty because "the actions of the Defendant, a professional architect, were clearly within the rule that a lay person could determine that the action were not within the standard of care" citing Guevara v. Ferrer, 247 S.W.3d 662 (Tex. 2007). Alternatively, MOAB asserts it provided such testimony if it was necessary.

In a negligence case, expert testimony is necessary to establish the standard of care and the violation of that standard when the nature of the negligence is not within the common experience of a layperson. See FFE Transp. Servcs. V. Fulgham, 154 S.W.3d 84, 90 (Tex. 2004); Roark v. Allen, 633 S.W.2d 804,809 (Tex. 1982). MOAB's reliance on the Guevara, case is completely misplaced and it has no application to the facts of this case in any respect.

Page | 4

Guevara involved a personal injury claim after an automobile accident where the plaintiff didn't call a medical expert on the issue of causation; it was not a medical malpractice case. The evidence consisted of the plaintiff's physical condition before the accident as compared to his condition after the accident, but no expert testified that his medical conditions were attributable to the accident.

On appeal, the defendant challenged the sufficiency of the evidence because no expert testified the accident was the cause of his medical conditions which required substantial treatment. In finding the evidence sufficient, the court observed evidence "establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition" could suffice to support a causation finding between the automobile accident and basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents. See Guevara.

The Guevara case does not hold that a plaintiff alleging professional malpractice is relieved of the burden of establishing what standard of care is required of the professional and that such standard of care was breached under the particular facts of a case. ALS 88 is a licensed architect and created architectural design plans for construction of an administration building to be utilized by the IBWC, an agency of the federal government. ALS 88's design of the subject building is not within the common experience of a layperson. MOAB failed to demonstrate how Guevara applies in this case or how the work of an architect is within the common knowledge and experience of a layperson.

MOAB separately argues its evidence was sufficient to establish the standard of care owed by a professional architect although it insisted at trial it was not required to provide expert testimony to establish its claim. (RR Vol. 6 pg. 150, lines 1-5) Ms. Madsen testified on direct that she was familiar with the way an architect produces work in the design/build context and that in her experience ALS 88 did not respond to the design/build appropriately in this situation. (RR Vol. 5 pg. 9, lines 8-23) Nothing further was solicited from MOAB as to what standard of care was owed by ALS 88 or how the standard of care was breached.

More importantly, Ms. Madsen is not a licensed architect and admitted on cross-examination that she was "fairly ignorant about the design build end of it from the architect's perspective." (RR Vol. 5 pg. 35, lines 9-17 & Defense Exhibit 1) Contrary to MOAB's argument, Ms. Madsen is not qualified to opine about an architect's duty. Moreover, Ms. Madsen never identified what duty ALS 88 owed to MOAB or how ALS 88 supposedly breached any such duty in this case.

### B.  Proximate Cause

**Cause in Fact**

MOAB offered legally insufficient evidence that any acts or omissions of ALS 88 were the cause in fact of MOAB being terminated from the construction project by the IBWC. Most relevant for purposes of evaluating cause in fact are the following undisputed facts:

1)  MOAB fired ALS 88 in September 2012 yet MOAB wasn't terminated from the project until December 2013, approximately a year and a half later;

2) the MOAB response to IBWC show cause letter and letter of termination identified MOAB's failure to physically construct the foundation as the basis for its decision to terminate MOAB (Defense Exhibits 9 & 10 - RR Ex. Vol. pgs. 31-64);

3) the IBWC letters referenced above didn't mention ALS 88 in any respect;

4) Ms. Madsen admitted ALS 88 had nothing to do with the problems MOAB encountered in completing the foundation (RR Vol. 5 pg. 110, lines 18-25 – pg. 111, lines 1-8);

5) Ms. Madsen admitted that the IBWC listed MOAB's failure to construct the foundation as the primary reason for its decision to terminate MOAB from the project (RR Vol. 5 pg. 111, lines 9-13)

6) Ms. Madsen admitted that MOAB did not respond to the letter of termination to dispute any of the allegations made by the IBWC (RR Vol. 5, pg. 108)

MOAB's claim that it offered ample evidence of proximate cause is clearly refuted by the above evidence.

Further, there is not a scintilla of evidence that ALS 88's refusal to give MOAB the AutoCAD software was a basis of IBWC's decision to terminate MOAB. There is no evidence from which a reasonable jury could conclude that ALS 88's actions made the project unsalvageable since MOAB continued on the project for approximately a year and a half after it terminated ALS 88. MOAB's claim that the IBWC wouldn't tolerate more delays is refuted by evidence that MOAB was allowed more than one opportunity to complete the foundation before the IBWC issued show cause and termination letters.

Considering the above, MOAB's claims that ALS 88 allegedly failed (1) to adhere to a chain of communication, (2) to revise the 75% architectural design drawings for re-submittal to IBWC, or (3) to provide the AutoCAD software to MOAB are insufficient to refute the overwhelming evidence that these alleged acts or omissions were not the cause in fact of MOAB's termination from the project.

**Foreseeability**

MOAB separately had to establish that any damage claimed by the alleged negligence of ALS 88 was foreseeable. MOAB failed to specifically address the foreseeability prong of proximate cause in its Brief. The record is devoid of any evidence that at the time the parties contracted, it was anticipated that any acts or omissions by ALS 88 would reasonably lead to MOAB's termination by IBWC or that MOAB would attempt to hold ALS 88 liable under its contract with IBWC, a contract to which ALS 88 is not a party.

Having failed to respond or otherwise identify evidence that establishes foreseeability, this court should conclude that MOAB failed to establish its negligence claim and/or that its damages were foreseeable and reverse and render the jury verdict in favor of ALS 88 on this basis alone.

## C. Evidence Conclusively Negated MOAB's Negligence Claims

MOAB denies that ALS 88 conclusively negated its negligence claims and asserts it offered extensive testimony about the design flaws citing RR vol. 5, pgs. 172-3. MOAB also claims ALS 88 was required to provide the AutoCAD software because the owner wanted it citing RR vol. 5, pg. 153.

Contrary to MOAB's assertion, there is not a scintilla of evidence of any defective design. On direct, counsel for MOAB questioned Ms. Madsen about a single IBWC comment to the 75% design submittal by ALS 88 which was completely unrelated to a defective design. (RR vol.4 pg. 65, lines 1-25-pg. 66, lines 1-17) On Cross-examination

Ms. Madsen admitted that she had no knowledge of any structural flaw in the design itself. (RR Vol. 5 pg. 73-74, lines 22-1) MOAB's counsel did not illicit any evidence of defective design from Ms. Sequoyah, a licensed architect, or from any other licensed architect.

In MOAB's brief, it claims Ms. Madsen testified extensively about design flaws at RR vol. 5, pgs 172-73. This testimony was on re-direct however Ms. Madsen isn't "testifying extensively" about "design flaws" as asserted. Instead, Ms. Madsen is discussing the fact that the specifications had omitted design elements, i.e. a lack of design as opposed to a design flaw. This was a direct result of MOAB's failure to provide ALS 88 with a cost loaded budget so that ALS 88 would know what design elements to include in the overall design.

### Issue 3: MOAB failed to prove its damages

MOAB completely fails to address the sufficiency of its evidence of damages and only vaguely addresses out-of-pocket damages in its response Brief. As asserted in Appellant's Brief, there is no legally sufficient evidence to support the award of damages. Although MOAB asserted a negligence claim, since there were no personal injuries or property damage, its damages are economic in nature and generally considered contractual injuries.

Since contractual damages must be calculated with reasonable certainty, MOAB was required to offer legally sufficient evidence to support the entire amount awarded which it did not do. Without reference to any documents, Ms. Madsen claimed she was paid a total of $329,383.05 by the IBWC and incurred costs of $929,887.74 through MOAB's termination from the project. Yet, it is undisputed that ALS 88 was terminated a year and a half before the IBWC terminated MOAB and that ALS 88 had no responsibility for

Page | 9

MOAB's failure to construct the foundation which is the stated reason for its termination by IBWC. Under these circumstances MOAB was not entitled to recover all of its expenditures from ALS 88 as a matter of law.

Separately, MOAB asserts it should be allowed to recover its damages from ALS 88 under the IBWC contract even though ALS 88 is not a party to that contract and there is not a scintilla of evidence that this kind of damage was foreseeable to the parties at the time they contracted. MOAB offered no evidence to establish that when MOAB and ALS 88 entered into the design/build contract, it was foreseeable that MOAB would seek to hold ALS 88 liable in damages under the IBWC construction contract; a contract to which ALS 88 was not a party. Since MOAB was required to specifically plead for these damages, but didn't they are waived and ALS 88 was not required to specially except as asserted.

### Issue No. 4    Trial court error

The trial court did err in admitting certain exhibits, in overruling objections to hearsay and speculative testimony, and in excluding the testimony of a rebuttal witness; these cumulative errors were harmful and caused the rendition of an improper judgment.

### EXHIBITS

*Plaintiff's Exhibit 5: Email from former MOAB employee to ALS 88/Annastacia Sequoyah (RR Ex. Vol. pgs. 242-244)*

MOAB pre-offered this exhibit without a business record affidavit or the testimony of a custodian of record. ALS 88 objected to this exhibit on the basis that it was not a statement of either party and was not offered pursuant to a business record affidavit or the

custodian of records of MOAB; the court overruled the objection. (RR Vol. 2 pgs. 27-29) MOAB's response brief misses the point; MOAB didn't offer these documents through the testimony of a custodian of records or other qualified witness or through a business records affidavit, so MOAB failed to comply with Tex. R. Evid. 803(6).

Furthermore, the admission of this exhibit combined with the other trial court errors identified was harmful and contributed to the rendition of an improper judgment. Exhibit 5 included multiple comments and statements by a fired employee of MOAB, Bruce Towne related to the work of ALS 88, a professional architect. There is no evidence Bruce Towne was an architect, that he had any knowledge or experience in dealing with architects, that he understood the duties of architects, or what is reasonably expected of an architect under the circumstances of this case. Admission of this exhibit allowed the jury to conclude that ALS 88 failed to comply with duties or standards without any competent evidence to support the inference.

*Plaintiff's Ex. 6: Attachment to Email (RR Ex. Vol. pgs. 244-251)*

ALS 88 objected to the attachment to Exhibit 6 which was a modified version of IBWC's 75% design review comments on the basis they were not as represented in the cover e-mail and it was not a business record of MOAB. (RR Vol. 2 pgs. 29-33) The attachment to exhibit 6 was not a document generated by MOAB and it was not authenticated by a custodian of IBWC or an affidavit filed in advance of trial. MOAB didn't address this exhibit in any respect in its response brief, accordingly the Court should conclude MOAB waives any response.

*Plaintiff's Exhibit 12: Email between former MOAB employee Bruce Towne and ALS 88*

Page | 11

ALS 88 objected to this exhibit on the basis that it was a statement of a former employee of MOAB who Ms. Madsen testified she terminated during the course of the project. The court overruled the objection. (RR Vol. 2 pg. 36) Just as admission of exhibit 5 was error, admission of exhibit 12 allowed the jury to consider multiple statements by Bruce Towne related to the work performed by ALS 88. These unsubstantiated comments allowed the jury to conclude that ALS 88 had failed or refused to do what another architect would do under the same or similar circumstances despite no evidence to support his conclusions.

*Plaintiff's Exhibit 13: IBWC comments to 75% design (RR Ex. Vol. pgs 257-262)*

ALS 88 objected to this exhibit on the basis of hearsay since MOAB offered no custodian of record from IBWC and no other qualified witness to establish the authenticity of this exhibit. (RR Vol. 2 pg. 36) For the same reasons stated above, the trial court erred in admitting hearsay evidence without requiring MOAB to comply with the requirements of Tex. R. Evid. 803(6).

*Plaintiff's Exhibit 22: IBWC email to MOAB (RR Ex. Vol. pgs 281)*

ALS 88 objected to this exhibit on the basis of hearsay since MOAB offered no custodian of the record from MOAB or IBWC and no other qualified witness to establish the authenticity of this exhibit. (RR Vol. 2 pg. 36) For the same reasons stated above, the trial court erred in admitting hearsay evidence without requiring MOAB to comply with the requirements of Tex. R. Evid. 803(6).

Admission of this exhibit combined with the other trial court errors identified was harmful and contributed to the rendition of an improper judgment. This exhibit included

multiple comments and statements by IBWC employees or representatives related to the work of ALS 88, a professional architect. There is no evidence the author of the e-mail was an architect, that she understood what had transpired under the circumstances of this case. Admission of this exhibit allowed the jury to conclude that ALS 88 failed to comply with duties or standards without any competent evidence to support the inference.

*Plaintiff's Exhibit 25: IBWC email to MOAB (RR Ex. Vol. pgs 285)*

ALS 88 objected to this exhibit on the basis of hearsay since MOAB offered no custodian of the record from IBWC and no other qualified witness to establish the authenticity of this exhibit. (RR Vol. 2 pg. 40) For the same reasons stated above, the trial court erred in admitting hearsay evidence without requiring MOAB to comply with the requirements of Tex. R. Evid. 803(6).

This exhibit included multiple statements by IBWC employees or representatives related to the work of ALS 88, a professional architect. Admission of this exhibit allowed the jury to conclude that ALS 88 failed to comply with duties or standards without any competent evidence to support the inference.

## TESTIMONY

On direct examination, Ms. Madsen was asked for examples of how ALS 88's 75% design completion documents had created problems for MOAB, and when she stated "the owner because of the chain of command naturally assumed" counsel for ALS 88 objected on the basis speculation. (RR Vol.4 pg. 59, lines 16-25) Similarly, Ms. Madsen again started to testify what the IBWC thought when they received the 75% design completion documents and counsel for ALS 88 objected on the basis of

Page | 13

speculation. Finally, Ms. Madsen was asked if the 75% design drawings created expectations on the part of the owner to which counsel for ALS 88 objected on the basis of hearsay and speculation. (RR Vol. 5 pg. 62, lines 22-25 – pg. 63, lines 1-7) The trial court overruled these objections.

In its response brief MOAB claims that statements of contracting parties are exceptions to the hearsay rule under the state of mind exception citing Settlement Funding, LLC v. RSL Funding, LLC, 3 F.Supp. 3d 590 (SDTX-Houston, 2014) and Case Corp. v. Hi Class Bus. Sys. of Am., Inc., 184 S.W.3d 760, 782 (Tex.App.-Dallas, 2005). However, these cases don't support MOAB's argument in any respect because IBWC was not a party to the contract between MOAB and ALS 88. Moreover, Ms. Madsen never identified any particular employee or representative of the IBWC, a federal governmental entity, who allegedly made these out of court statements. This testimony allowed the jury to improperly infer what the IBWC believed or felt about the particular circumstances queried.

Statements admitted under rule 803(3) are typically spontaneous remarks about pain or sensation, not readily observable by third persons, while the sensation is being experienced and does not extend to statements of past facts or conditions. See Power v. Kelly, 70 S.W.3d 137, 141 (Tex.App.-San Antonio 2001, pet. denied)

**Proffered Testimony of Cullen Patrick Coltrane/professional architect & fact witness**

ALS 88 offered the testimony of Cullen Patrick Coltrane, a subcontractor for ALS 88 on the Falcon Dam project on the basis he was identified as a subcontractor for ALS 88 on the project and as a rebuttal witness to Ms. Madsen's testimony regarding the

inability of MOAB to provide a budget from the beginning of the project. MOAB objected because Mr. Coltrane had not been specifically identified in the responses to request for disclosure and argued ALS 88 was also required to identify him as a rebuttal witness.

In its response brief, MOAB fails to address ALS 88's claim that the trial court erred in excluding Mr. Coltrane as a rebuttal witness. Moreover, MOAB's counsel misrepresents Mr. Coltrane's testimony regarding his experience in working other projects and the timing of when cost loaded budgets will typically be provided to lead architects. Moreover, the totality of Mr. Coltrane's testimony demonstrates that an architect is a designer and can't know if a project is over budget without a cost loaded budget. (RR Vol. 6, pgs. 162-166)

Mr. Coltrane's testimony was offered to rebut Ms. Madsen's claim that MOAB could not prepare a cost loaded budget early in the project. ALS 88 could not have anticipated that MOAB would claim it could not do so since the evidence showed MOAB was required to provide a cost loaded budget under its contract with ALS 88 and was expected to do so by the IBWC as well. (RR Vol. 6 pgs. 153-161) Even if the trial court did not err in excluding Mr. Coltrane's testimony because he was not specifically identified in discovery responses, it was error to exclude his testimony as a rebuttal witness.

## PRAYER

The jury verdict in favor of MOAB should be reversed and rendered in favor of ALS 88 because the economic loss doctrine forecloses MOAB's negligence claims as a matter

of law and there is legally insufficient of what standard of care was owned by ALS 88 or that ALS 88 breached that standard of care. Separately, MOAB failed to establish its damages and/or failed to plead for special damages. The trial court error in admitting exhibits and testimony and in excluding rebuttal testimony all of which cumulatively led to the rendition of an improper judgment. ALS 88 prays for its costs and attorney fees and all other relief at law or in equity to which it may justly be entitled.

Respectfully submitted this the 6th day of October, 2015.

<div style="margin-left:40%">

Law Office of Regina Bacon Criswell
Carriage Place
7803 Bent Briar
San Antonio, TX  78250
210-775-1155 (ofc)
210-251-2071 (fax)

/S/  *Regina B. Criswell*____
Regina Bacon Criswell
Texas Bar No. 01496580

</div>

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and forgoing was served on the following in accordance with the Tex. R. App. Proc. on the 6th day of October, 2015 as indicated below:

Thomas C. Hall                                    Via e-file
*Attorney for MOAB Construction*

<div style="margin-left:40%">

/S/  *Regina B. Criswell*____
REGINA BACON CRISWELL

</div>

## CERTIFICATE OF WORD COUNT

This is to certify that the word count of Appellant's Brief exclusive of excepted parts is 4550 according to the computer program used to prepare the brief.

<div style="margin-left:40%">

/S/  *Regina B. Criswell*____
REGINA BACON CRISWELL

</div>