# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00676-CR

**James Manson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 427TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-18-300307, THE HONORABLE TAMARA NEEDLES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Manson appeals his conviction for felony assault family violence enhanced by a previous conviction. *See* Tex. Penal Code § 22.01(b)(2)(a). The district court assessed Manson's punishment at twenty-five years' imprisonment. On appeal, Manson contends that the district court erred by allowing an investigating police officer to testify that the victim reported feeling pain and by allowing the investigating officer to testify about his conclusion that family violence occurred. We will affirm the district court's judgment of conviction.

## BACKGROUND

Manson was convicted of committing assault family violence after an altercation at a Capital Metro bus stop with the victim, his common-law spouse of eight years. During the argument, Manson poured some beer on the victim and threw a can at her forehead, causing a

wound near her left eyebrow that swelled and bled. Manson fled from the scene, and the victim called police.

At trial, the victim testified that Manson threw the beer can at her head in anger and meaning to strike her. She was bleeding from her eye after being hit with the can. She said that when hit, she "didn't feel it because we were drinking," but she agreed that it hurts "when something hits you and causes you to bleed." The victim did not remember calling the police and asking for a ride home. But she did remember telling police that Manson "was going to beat [her] ass if [she] called—whenever he got out of jail" and that he had assaulted her at least twice before. The victim testified that she and Manson still had a relationship and that she wanted "nothing to do with this at all." She also testified that Manson told her that he did not want her to be "here" at trial. Recordings of multiple jailhouse telephone calls between Manson and the victim were admitted into evidence. In the recordings, Manson tells the victim to "stay out of the way," "stay out of sight," and "lay low." He repeatedly advised her not to appear if she were served with a subpoena for trial stating, "[A]ll you got to do is not show up, I beat the case," and, "[Y]ou cannot show up on my court date. If you do, you gonna give me twenty-five years."

Austin Police Department officers were dispatched to the scene of the assault. Due to some confusion with the 911 call taker, it took officers about thirty minutes to arrive. Officer Eric Pastor, the first officer to arrive at the scene, testified that he received a "family violence call." The victim told him that "she was hit in the head by her boyfriend with a beer can." Officer Pastor saw that "she had a wound above her left eye" and "a cloth in her hand that she was patting down that had dried blood on it by the time we had gotten there." Officer Pastor testified that although he conducted the initial questioning, another on-scene officer handled the full investigation.

Officer Alejandro Gaitan testified that when he arrived at the scene, the victim was shaking and visibly upset. He saw an "open" and "fresh" cut to her eyebrow and blood on the left side of her cheek. The victim told him that her boyfriend, James Manson, had caused the cut by striking her in the face with a can of beer after a verbal altercation.

Officer Gaitan testified that he asked the victim if she felt pain when the can hit her and that she told him that she did. She also told him that she was not feeling it anymore because she had been drinking. Officer Gaitan took the victim's statement and took photographs, which were admitted into evidence, documenting the victim's injuries. He testified that he gave the victim a ride because she was "pretty far from home" and "fearful that the defendant might still be in the area." After the victim told Officer Gaitan that she lived with Manson, the police officers drove her home and went inside to ensure that no one was there.

Austin Police Department Detective Tony Thornton testified that he was assigned to the Domestic Violence Unit and that he reviewed this case. Detective Thornton testified without objection that he thought there was probable cause for an arrest warrant and that he requested a warrant for assault family violence with a prior enhancement. Manson was arrested after issuance of the warrant.

When the State rested its case, and again after the charge conference, Manson moved for a directed verdict. The district court denied both motions. At the conclusion of trial, the jury convicted Manson of felony assault family violence enhanced by a previous conviction, and the district court sentenced him to twenty-five years' imprisonment. Manson filed a motion for new trial that was denied by operation of law. This appeal followed.

3

**DISCUSSION**

**Admission of victim's statements about pain to investigating officer**

In his first issue, Manson contends that the district court erred by allowing Officer Gaitan to testify that the victim reported feeling pain because the statement was inadmissible hearsay. Manson specifically contends that Officer Gaitan should not have been allowed to testify as to the victim's statement about feeling pain thirty minutes earlier, before police arrived.

We review a trial court's ruling on the admission of evidence under an abuse-of-discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). We uphold the trial court's ruling unless it is outside the zone of reasonable disagreement. *Id*. An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016).

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is inadmissible except as provided by statute, the rules of evidence, or other rules prescribed under statutory authority. *Id*. R. 802. Rule 803(3), in relevant part, provides an exception to the rule against hearsay for:

> [a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

*Id*. R. 803(3). Manson's hearsay complaint is based on this testimony from Officer Gaitan:

> Q [Prosecutor:]  So, Officer Gaitan, did you learn how [the victim] had obtained the wound on top of her head?

4

A [Officer Gaitan:]    Yes, ma'am.

Q [Prosecutor:]    And was it from—what was it from?

A [Officer Gaitan:]    The statement she gave to me was that her boyfriend, Mr. Manson, had struck her in the face with a can of beer following a verbal altercation she had.

Q [Prosecutor:]    Now, did you ask her if she felt pain?

A [Officer Gaitan:]    Yes, ma'am.

Q [Prosecutor:]    And what did she say?

[Defense counsel]:    Objection; hearsay.

. . . .

[Defense counsel]:    What's your hearsay [excep]tion?

[Prosecutor]:    Her then-existing mental state, her physical condition. I can reference—it's 803.1—yeah. It's 803.3, which is a then-existing mental, emotional or physical condition, a statement of the declarant's then-existing state of mind, such as motive, intent or plan; or emotional, sensory or physical condition, such as pain or bodily health.

The Court:    And your response, [defense counsel]?

[Defense counsel]:    If I could have just a moment to look at this, Your Honor. Your Honor, he was talking about an event that happened at least 30 minutes prior. And with it being 30 minutes prior, that's like a statement about memory of being in that physical condition. I don't think it meets the exception under 803.3.

The Court:    I'm going to overrule that.

. . . .

5

After the court's ruling, Officer Gaitan testified that the victim did feel pain when she was hit:

Q [Prosecutor:]      Officer Gaitan, . . . we were talking about whether or not [the victim] told you that she felt physical pain when the can hit her in the eye. Did she tell you she felt physical pain?

A [Officer Gaitan:]      Yes, ma'am.

Q [Prosecutor:]      Okay. Did she later explain to you that she wasn't feeling it anymore because she had been drinking?

A [Officer Gaitan:]      Yes, ma'am.

Q [Prosecutor:]      Okay. But when it hit her, she felt pain.

A [Officer Gaitan:]      Yes, ma'am. Usually, I ask, "Did it hurt at the time? Does it hurt now?"

Q [Prosecutor:]      So when the can hit her in the head, she felt pain. And later, it no longer hurt because she had been drinking.

A [Officer Gaitan:]      Yes, ma'am.

Statements admitted under the physical-condition exception in Rule 803(3) are usually spontaneous remarks about pain or some other sensation, made by the declarant while the sensation, not readily observable by a third party, is being experienced. *Power v. Kelley*, 70 S.W.3d 137, 141 (Tex. App.—San Antonio 2001, pet. denied); *James v. Texas Dep't of Human Servs.*, 836 S.W.2d 236, 243 (Tex. App.—Texarkana 1992, no writ) (citing *Ochs v. Martinez*, 789 S.W.2d 949, 959 (Tex. App.—San Antonio 1990, writ denied)); *see* Tex. R. Evid. 803(3) (providing hearsay exception for statement of declarant's then-existing physical condition, including "pain" but generally excluding "a statement of memory or belief to prove the fact remembered or believed"); *Couchman v. State*, 3 S.W.3d 155, 158 (Tex. App.—Fort Worth 1999, pet. ref'd) (concluding that victim's statement to aunt reporting pain she was experiencing

was admissible under 803(3)).  The Rule 803(3) exception "does not extend to statements of past external facts or conditions."  *Kelley*, 70 S.W.3d at 141; *James*, 836 S.W.2d at 243; *Ochs*, 789 S.W.2d at 959.

However, even if the statement was not admissible under Rule 803(3), Officer Gaitan's testimony that the victim reported feeling pain was harmless.  Erroneous admission of evidence is non-constitutional error.  *Gonzalez*, 544 S.W.3d at 373.  Non-constitutional error is reversible only if it has a substantial and injurious effect or influence in determining the jury's verdict.  *Id*.  We will not overturn a conviction if we have a fair assurance from examination of the record as a whole that the error did not influence the jury, or had but a slight effect.  *Id*.

Here, Officer Gaitan's testimony was not the only evidence that the jury received as to the pain the victim felt after Manson threw the can at her.  *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (noting that erroneously admitted evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"); *Washington v. State*, 485 S.W.3d 633, 638-39 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding that error in admission of evidence may be rendered harmless when substantially same evidence is admitted elsewhere without objection).  The jury heard the victim testify that she was bleeding from her eye after being hit with the can, and she agreed that it hurts "when something hits you and causes you to bleed."

Further, "[a] fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it."  *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *see Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (noting that while no witness directly testified that wife suffered pain as result of being struck in mouth by her husband's fist, jury was

7

permitted to draw reasonable inferences from such evidence, including that she suffered pain); *May v. State*, No. 03-05-00577-CR, 2006 Tex. App. LEXIS 10477, at *8 (Tex. App.—Austin Dec. 5, 2006, no pet.) (mem. op., not designated for publication) (stating that jury may infer that victim suffered pain based on evidence of injuries or circumstances of assault). Existence of a cut on the body is sufficient evidence of physical pain necessary to establish bodily injury for purposes of the offense of assault. *Arzaga*, 86 S.W.3d at 778. Here, the jury heard that Manson threw a can at the victim intentionally and angrily, causing a facial cut with swelling and bleeding. The jury also saw photographs of the victim's injury.

Considering the other evidence in this record as to the victim's pain and the logical inferences that the jury could make from the evidence, we conclude that any error from Officer Gaitan's testimony about the victim's complaint of pain was harmless. *See* Tex. R. App. P. 44.2(b). Accordingly, we overrule Manson's first issue.

**Officer's conclusion that family violence occurred**

In his second issue, Manson contends that the district court erred by allowing Officer Gaitan to testify about his conclusion that family violence occurred, over Manson's objection that such testimony invaded the province of the jury:

> Q [Prosecutor:]     And based on your training and experience, what did you believe had occurred that night?
>
> [Defense counsel]:  Your Honor, may we approach?
>
> The Court:          Yes.
>
> (Bench conference on the record)

| [Defense counsel]: | This question calls for an opinion. And that kind of opinion I don't think he's qualified to give about—and try to elicit testimony that there was an assault family violence that happened here, which also invades the province of the jury. So I guess I have two objections. It calls for an opinion that's unfounded. Two, it invades the province of the factfinder. |
| --- | --- |
| The Court: | Response from the State? |
| [Prosecutor]: | Well, what I'm eliciting is based on his training and experience and his investigation, he had probable cause to believe an assault had occurred, which is why we're here. |
| The Court: | Objection; overruled. |
| . . . . | |
| Q [Prosecutor:] | Officer Gaitan, based on your training and experience and your investigation that you conducted into this case, did you form a conclusion as to what occurred? |
| A [Officer Gaitan:] | Yes, ma'am. |
| Q [Prosecutor:] | What was your conclusion? |
| A [Officer Gaitan:] | The conclusion was that the incident is what we call family violence. |

Manson contends that only the jury may voice an opinion about a defendant's guilt or innocence. But Officer Gaitan did not opine as to whether Manson was guilty or the victim was truthful.

Even assuming that the court erred by allowing the complained-of testimony, Manson has not shown that he was harmed. *See* Tex. R. App. P. 44.2(b). Here, aside from Officer Gaitan's conclusion that the incident involved family violence, the jury had evidence that:

- Officer Pastor received a "family violence call" and was the first officer at the scene;

9

- the victim had called police to report that she had been in an argument that became physical;

- during the argument, Manson poured some beer on the victim and threw a can at her forehead;

- Manson threw the beer can at her head in anger and meaning to strike her;

- Manson threatened to beat the victim when he got out of jail if she called police;

- the victim identified Manson at trial;

- the victim was bleeding from her eye after being hit with the can;

- Officer Pastor testified that the victim "had a wound above her left eye" and "a cloth in her hand that she was patting down that had dried blood on it";

- Officer Gaitan found the victim "shaking and visibly upset";

- Officer Gaitan testified that the victim had an "open" and "fresh" cut to her eyebrow and blood on the left side of her cheek, which he documented in photographs admitted into evidence;

- the victim told police that the cut was caused by the beer can that Manson threw at her;

- the victim was Manson's common-law spouse of eight years;

- the victim and Manson lived together;

- Manson fled from the scene;

- Manson had assaulted the victim at least twice before;

- Manson advised the victim not to appear at his trial and said that if she did, he would receive "twenty-five years";

- the victim told Officer Gaitan that she felt pain when the can hit her;

- the victim agreed that it hurts "when something hits you and causes you to bleed";

- officers gave the victim a ride home because the victim was "fearful that the defendant might still be in the area";

- Detective Thornton thought there was probable cause to arrest Manson, and Detective Thornton requested a "warrant for assault family violence with a prior" enhancement; and

- the State's closing argument did not emphasize Officer Gaitan's post-investigation conclusion about the offense that occurred, but rather contained only one reference to the investigation: "The officers told you what they observed, what they thought, how they conducted their investigation."

This trial record, considered in its entirety, shows that any error in allowing the complained-of testimony from Officer Gaitan would have had but slight effect, if any, on the jury given the strength and overwhelming amount of additional evidence indicating Manson's guilt of the charged offense. *See Motilla v. State*, 78 S.W.3d 352, 356-57 (Tex. Crim. App. 2002) (stating that "overwhelming evidence" of guilt is one consideration in deciding whether improper admission of evidence was harmful). Accordingly, we conclude that Officer Gaitan's complained-of testimony did not have a substantial and injurious effect in determining the jury's verdict. *See* Tex. R. App. P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373. We overrule Manson's second issue.

**CONCLUSION**

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   February 27, 2020

Do Not Publish