# NO. 12-18-00356-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CARL R. JONES, M.D.,*<br>*APPELLANT* | § | *APPEAL FROM THE 145TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ALICE WAGGONER,*<br>*APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Carl R. Jones, M.D., appeals the trial court's order denying his motion to dismiss Alice Waggoner's suit against him. We affirm.

## BACKGROUND

On October 15, 2015, Waggoner arrived at the emergency room of Nacogdoches Memorial Hospital complaining of abdominal pain as a result of pancreatitis. Her medical history included gallstones, removal of the gallbladder, heart problems, asthma, lung problems, and chronic obstructive pulmonary disease (COPD). Dr. Jones suspected that a gallstone was blocking the pathways to her pancreas and performed an endoscopic retrograde cholangiopancreatograpy (ERCP) on October 20. However, no gallstone was discovered. Within a few hours of this ERCP, Waggoner developed subcutaneous emphysema with the symptoms of coughing with facial and chest wall puffiness. When the subcutaneous emphysema markedly worsened, Waggoner was transferred 175 miles to Texas Health Presbyterian—Dallas. After six days of treatment in Dallas, Waggoner was discharged to return home.

Waggoner brought a healthcare liability claim against Dr. Jones. She alleges that Dr. Jones breached the standard of care by failing to use a non-invasive test such as a magnetic resonance cholangiopancreatography (MRCP) to determine whether the ERCP was necessary. In an attempt

to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Waggoner served Dr. Jones with an expert report and curriculum vitae of Perry Hookman, M.D.  Dr. Jones filed objections to Dr. Hookman's report urging that he was unqualified as an expert and that his report was conclusory on both causation and standard of care.  Following a hearing, the trial court allowed Dr. Hookman to supplement his report in accordance with Section 74.351(c) to cure deficiencies regarding his qualifications and causation.

After Dr. Hookman timely supplemented his report, Dr. Jones renewed his objections and again moved for dismissal.  Following a hearing, the trial court denied Dr. Jones's renewed challenge and motion to dismiss regarding Dr. Hookman's expert report.  This interlocutory appeal followed.[1]

## EXPERT REPORT

In his first issue, Dr. Jones contends that Dr. Hookman's report fails to establish causation.  In his second issue, Dr. Jones contends that Dr. Hookman is not qualified as an expert under the Texas Medical Liability Act because he had not performed the medical procedure described in his report in over twenty years.  We will consider Dr. Jones's second issue first.

**Standard of Review**

We review a trial court's decision to grant or deny a motion to dismiss based on the adequacy of an expert report for an abuse of discretion.  *Abshire v. Christus Health Se. Tex*., 563 S.W.3d 219, 223 (Tex. 2018).  A trial court abuses its discretion if it acts without reference to guiding rules or principles.  *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015).  However, in exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit.  *Id*. at 144.  When reviewing factual matters committed to the trial court's discretion, the appellate court may not substitute its judgment for that of the trial court.  *Gray v. CHCA Bayshore L.P*., 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

---

[1] An interlocutory appeal of an order denying a motion to dismiss under Section 74.351 is permitted.  TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2018).

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a healthcare liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). The Act's expert-report requirement seeks "to deter frivolous lawsuits by requiring a claimant early in litigation to produce the opinion of a suitable expert that his claim has merit." ***Columbia Valley Healthcare Sys., L.P. v. Zamarripa***, 526 S.W.3d 453, 460 (Tex. 2017) (citing ***Scoresby v. Santilla***, 346 S.W.3d 546, 552 (Tex. 2011)). While the plaintiff is not required to prove her claim with the expert report, the report must show that a qualified expert is of the opinion she can. ***Columbia Valley***, 526 S.W.3d at 460. An expert report is sufficient under the Act if it "provides a fair summary of the expert's opinions. . . regarding applicable standards of care, the manner in which the care rendered. . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); ***Abshire***, 563 S.W.3d at 523. The trial court need only find that the report constitutes a "good faith effort" to comply with the statutory requirements. ***Abshire***, 563 S.W.3d at 523; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l). The report is adequate if it contains sufficient information: (1) informing the defendant of the specific conduct called into question, and (2) providing a basis for the trial court to conclude the claims have merit. *See* ***Baty v. Futrell***, 543 S.W.3d 689, 693-94 (Tex. 2018). A report need not marshal all of the claimant's proof, but a report that merely states the expert's conclusions about the standard of care, breach, and causation is insufficient. ***Abshire***, 563 S.W.3d at 223. An expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case. ***Certified EMS, Inc. v. Potts***, 392 S.W.3d 625, 632 (Tex. 2013).

**Expert Qualifications**

The proponent of an expert report has the burden to show that the expert is qualified. ***Broders v. Heise***, 924 S.W.2d 148, 152-53 (Tex. 1996). To qualify as an expert witness on the issue of whether a *physician* departed from the accepted standards of care, a witness must (1) practice medicine at the time such testimony is given or was practicing medicine at the time the claim arose; (2) have knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) be qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of

medical care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(a) (West 2017) (emphasis added). Under the Act, practicing medicine "includes, but is not limited to, training residents or students at an accredited school of medicine or osteopathy and serving as a consulting physician to other physicians who provide direct patient care, upon the request of other physicians. *Benge v. Williams*, 548 S.W.3d 466, 471 (Tex. 2018) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(b)).

To determine whether a witness is qualified on the basis of training and experience to opine regarding departures from the standard of care for physicians, we consider whether the witness is (1) board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(c). To qualify as an expert witness on the issue of whether a *health care provider* departed from the accepted standards of care, a witness must (1) practice health care in a field of practice that involves the same type of care or treatment as that delivered by the health care provider, if the health care provider is an individual, at the time the testimony is given, or was practicing that type of health care when the claim arose; (2) have knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) qualify on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. *See id.* § 74.402(b) (West 2017) (emphasis added). To determine whether a witness is qualified on the basis of training and experience to opine regarding departures of the standard of care for a health care provider, we consider whether the witness is (1) certified by a state licensing agency or national professional certifying agency or has other substantial training or experience in the area of health care relevant to the claim and (2) actively practicing health care in rendering health care services relevant to the claim. *See id.* § 74.402(c).

Although every licensed physician is not qualified to testify on every medical question, whether an expert witness is qualified under Texas Rule of Evidence 702 lies within the sound discretion of the trial court. *See Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). A physician need not practice in the particular field about which he is testifying so long as he can demonstrate that he has knowledge, skill, experience, training or education regarding the specific issue before the court that would qualify him to give an opinion on that subject. *Id.*; *see also Broders*, 924 S.W.2d at 153 ("to determine whether an expert report

is sufficient to demonstrate the qualifications of the expert to opine, the trial court should focus on the medical experts 'knowledge, skill, experience, training or education' concerning the specific issue before the court that would qualify the expert to give an opinion on that particular subject'").

**Dr. Hookman's Qualifications**

Dr. Jones contends that Dr. Hookman is not qualified to give an expert report because he has not performed an ERCP in over twenty years. In support of this contention, Dr. Jones contends that we should follow the Texas Supreme Court case of *Larson v. Downing*, 197 S.W.3d 303 (Tex. 2006). There, the trial court excluded the plaintiff's expert in a medical malpractice case because it had been fifteen years since he performed surgery like the one performed by the defendant doctor. *Id*. at 104. However, we also note that our supreme court stated in *Larson* that "the qualification of a witness as an expert is within the trial court's discretion. We do not disturb the trial court's discretion absent clear abuse." *Id*.

In the instant case, the trial court determined that Dr. Hookman was qualified to issue his expert report. Dr. Hookman's expert report states that he is board certified in both internal medicine and gastroenterology and is licensed to practice in both Florida and Maryland. Further, he asserts that he provides direct patient care through seminars and teaching rounds with young gastroenterologists and students. He states that his professional practice includes training residents and medical students at an accredited medical school by the American Medical Association's liaison committee on medical education. Additionally, he serves as a consulting physician to other physicians who provide patient care upon the request of such other physicians. Dr. Hookman states that he has experience involving the treatment of patients with complaints similar to Waggoner's. The application of the statutory definition in the TMLA is a legal issue for the court. *Benge*, 548 S.W.3d at 472. An expert under the TMLA need not be engaged in patient care. *Id*. Accordingly, we hold that the trial court, with Dr. Hookman's extensive experience in teaching and consulting in internal medicine and gastroenterology, was within its discretion to allow his expert report under the TMLA. Dr. Jones's second issue is overruled.

**Causation**

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Causation is often established in medical malpractice

5

cases through evidence of a "reasonable medical probability" or "reasonable probability" that the alleged injuries were caused by the negligence of one or more defendants. *Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010). In other words, the plaintiff must present evidence "that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence." *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399–400 (Tex. 1993)). An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff. *See McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.).

A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation. *See Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.). An expert cannot simply opine that the breach caused the injury. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539. Rather, the report must explain, to a reasonable degree, how and why the breach of the standard of care caused the injury based on the facts presented. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40. The report must explain the basis of the expert's statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.) (expert report must contain sufficiently specific information to demonstrate causation beyond conjecture).

In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878). "We may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Ortiz*, 378 S.W.3d at 671.

In the present case, Dr. Jones contends that Dr. Hookman improperly assumed that the ERCP procedure was the cause of the subcutaneous emphysema. He further argues that Dr. Hookman's approach did not address other potential causes of the subcutaneous emphysema and that Dr. Hookman's theory on causation is conclusory. We disagree.

"Causation may be proven by evidence showing that a surgical procedure was performed that was contraindicated or that preoperative testing was warranted and that testing was likely to

6

show the procedure should not have been performed or should have been performed differently." *Power v. Kelley*, 70 S.W.3d 137, 143 (Tex. App.—San Antonio 2001, no pet.). It can be negligent for a physician to perform a surgery that he should not have performed or would have performed differently if he had done preoperative testing required by the applicable standard of care. *See id*.

In his report, Dr. Hookman states that Dr. Jones attempted the ERCP without the benefits of imaging that a prior MRCP would have provided. He explains that an ERCP is an extremely risky gastroenterology procedure and should be employed later rather than sooner. According to Dr. Hookman, the ERCP was unnecessary because a MRCP performed the day after the procedure revealed no gallstones or any other obstructions blocking Waggoner's pancreatic passageways. He further explains that the ERCP caused unneeded and inappropriate manipulation and disruption of Waggoner's bile ducts which created her post-procedure complications. He explains that if a MRCP had been performed first, Dr. Jones would have realized the ERCP was not needed.

Dr. Hookman describes in his report that subcutaneous emphysema is a well-known complication of ERCP.

> Subcutaneous emphysema means air infiltrated into extra-intestinal body tissues including as far away from the intestine as the skin.
>
> …
>
> How does this occur? During ERCP as in other gastrointestinal endoscopic procedures compressed air is injected under pressure through the endoscope to maintain good vision via patency of the gastrointestinal lumen. The ERCP procedure like other gastrointestinal endoscopic procedures involves introduction of a foreign fiber optic tube into the body which injects compressed air through the endoscope. This [can] cause trauma known as mechanical trauma and/or barotrauma.

Dr. Hookman concedes that the trauma caused by the endoscopic procedure can cause perforations, which allow the air to escape the intestine. However, he explains that the air can escape in several ways and further illustrates how the air escaped in Waggoner's case.

> Another documented pathophysiological mechanism is an alveolar rupture due to increased intrathoracic pressure and or barotrauma during the ERCP procedure secondary to the injected air under pressure. Valsalva maneuvers during endoscopy during ERCP increase the intrathoracic pressure which leads to alveolar rupture [associated with COPD] and the development of air outside the intestine and into the peripheral tissues and skin. In my opinion, since the patient was also being treated for chronic obstructive pulmonary disease [COPD] this is the most likely mechanism of the complication known as subcutaneous emphysema.

Dr. Hookman concludes his report with the following causation summary: "Since no perforation was documented in Ms. Waggoner, I opine that the complication presented here of subcutaneous emphysema occurred due to an alveolar rupture due to increased intrathoracic pressure and barotrauma during the ERCP procedure secondary to the injected air under pressure during the unnecessary ERCP procedure. In my opinion, since the patient was also being treated for chronic obstructive pulmonary disease this is the most likely cause."

In his report, Dr. Hookman explains how the MRCP would have prevented Waggoner's subcutaneous emphysema. If the MRCP had been performed, it would have revealed that Waggoner's pancreatic passageways were clear and the ERCP would not have occurred. Compressed air would not have been introduced into Waggoner's intestine and she would not have suffered an alveolar rupture. As a result, Dr. Hookman's report is not conclusory. *See Jelinek*, 328 S.W.3d at 539-40. Causation may be proven by showing that preoperative testing was likely to show the procedure should not have been performed or should have been done differently. *See Power*, 70 S.W.3d at 143. Further, nothing in Section 74.351 suggests the preliminary report is required to rule out every possible cause of the injury, harm, or damages claimed, especially given that Section 74.351(a) limits discovery before a medical expert's report is filed. *Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 562 (Tex. App.—Dallas 2009, no pet.). We hold that it was not an abuse of discretion for the trial court to determine that the information Dr. Hookman provided in his report informed Dr. Jones of the specific conduct being called into question and provided a basis for the trial court to conclude that Waggoner's claims have merit. We overrule Dr. Jones's first issue.

#### CONCLUSION

Having overruled both of Dr. Jones's issues, the order of the trial court denying Dr. Jones' motion to dismiss is *affirmed*.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 15, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 15, 2019**

**NO. 12-18-00356-CV**

**CARL R. JONES, M.D.,**
Appellant
V.
**ALICE WAGGONER,**
Appellee

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C1733213)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order denying Dr. Jones' motion to dismiss **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **CARL R. JONES, M.D.,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*